## Ivy E. Carson v. The Metropolitan Life Insurance Company, of New York, Appellant.

*Contract—Insurance—Materiality of misrepresentation by insured.*

Parties to a contract by the very written stipulation settle for themselves all questions as to its materiality. The test of the materiality of a misrepresentation or concealment in a contract of insurance is that it influences the insurer in determining whether to accept the risk or not.

If an insured conceals from the insurer the fact that prior to the date of the policy he has been attended for a serious disease, there can be no recovery, and the fact that he did not die from the disease for which he was attended has no proper place in the consideration of the question.

*Insurance—Construction of policy—Evidence—Words and phrases.*

A policy of insurance contained a stipulation that the policy should be void if before its date insured had suffered from certain enumerated conditions, among others, pulmonary disease or chronic bronchitis, or had been attended by any physician for any serious disease. *Held*, (1) That there was no error in admitting evidence, without objection, for the purpose of enlightening the jury as to the understanding of the parties, at the time of the contract, on the ordinary acceptation of the phrase "pulmonary disease" as used by common people. (2) That an offer to show that insured had been under treatment for alcoholism was properly rejected, inasmuch as the offer was not limited or directed to the time prior to the issuing of the policy.

Argued March 18, 1896. Appeal, No. 10, Feb. T., 1896, by defendant, from judgment of C. P. Lycoming Co., Sept. T., 1895, No. 173, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover the amount due on a policy of insurance.   Before METZGER, P. J.

Verdict for the plaintiff for $100.

*Errors assigned* were:

(1) In answer to the defendant's point:

That as the witnesses for the plaintiff concede that pneumonia is a pulmonary disease, the plaintiff, if entitled to recover at all, can only recover $50.00, with interest from the date of the death of John W. Carson.  *Answer:* It is denied, as I understand it, that the plaintiff concedes that it is a pulmonary disease, except as understood in medical parlance.   If, however, it is a fact that it is conceded here to be proven that pneumonia is a pulmonary disease, and so understood by the people in general of ordinary intelligence, then, as I said before, there can be no recovery for more than $50.00.

(2) In its charge to the jury in stating as follows:

I take it that the language in this contract must be construed in its popular sense, and that popular sense would be that of the most intelligent people who are laymen, and not versed in the technical terms of medicine.

(3) In rejecting the following offer of evidence:

By Mr. Bradley : We propose to prove by this witness that John W. Carson, the insured, was treated at the Williamsport Sanitarium, for the disease of alcoholism; to be followed by other testimony by physicians that alcoholism is a serious disease, for the purpose of showing that under the terms of this contract the Metropolitan Life Insurance Company of New York is not liable to pay anything on account of his death.

By the Court: I shall rule this out on the ground that it is not material, unless you propose to follow it by showing that he died of some disease produced by alcoholism.   We will rule that out and seal a bill for you.   It is very plain to my mind that nothing is important that did not affect the result.   If this death resulted from any disease disconnected from that of alcoholism, this is of no account, as it is an immaterial misrepresentation.   Even if it was a misrepresentation, it would be wholly immaterial if it did not affect his life.

*W. P. Bradley,* for appellant,—on the question of false as-

574          CARSON *v.* INS. CO., Appellant.

Arguments—Opinion of the Court.          [1 Super. Ct.

sertion and concealment cited, Park on Insurance, 286; 1 Arnould on Insurance, 488. The materiality of a concealment or representation of fact depends not on the ultimate influence of the fact upon the risk or its relation to the cause of loss, but on the immediate influence upon the party to whom the communication is made or is due in forming his judgment at the time of effecting the contract: Richards on Insurance, 61; Currell v. Ins. Co., 29 Am. Dec. 439; Hartman v. Ins. Co., 21 Pa. 477.

*Max L. Mitchell,* for appellee.—The errors assigned all grow out of the construction of the policy. The question which presents itself is: What do the words mean? Words are to be taken most strongly against the company, the party using them: White v. Smith et al., 33 Pa. 189; Buckhard v. Travelers' Ins. Co., 102 Pa. 266; Insurance Co. v. Drach, 101 Pa. 283.

The best construction is that which is made by viewing the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it: Schuylkill Navigation Co. v. Moore, 2 Whart. 490; Addison on Contracts, 288, note.

What would the citizen of average intelligence understand by the words used? Commonwealth v. Dunbauld et al., 97 Pa. 293; Commonwealth, etc., v. Butler, 99 Pa. 539; DeLoy v. Insurance Co., 171 Pa. 1.

Opinion by Willard, J., May 11, 1896:

This was an action in the court below by the appellee against the Metropolitan Life Insurance Company of New York upon a contract of insurance dated July 2, 1894. John W. Carson, the deceased husband of the appellee, was the life insured. By the terms of the policy it was provided that for and in consideration of certain weekly premiums the company was to pay to the said John W. Carson, if he lived twenty years, the sum of two hundred dollars ($200); and in case he died before the expiration of twenty years to pay to any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured,

or for his burial, the one half of said sum, to wit, one hundred dollars ($100). It was further provided in said policy, viz: " Provided, however, that if he, the insured, die of any pulmonary disease within one year of the date of the policy, the company would only pay one half the amount which would otherwise be due and payable, to wit, fifty dollars ($50.00)."

This policy was delivered to John W. Carson, and it was therein provided that if its terms were not satisfactory, or if its conditions were not accepted and agreed to, the policy could be surrendered for cancellation to the district superintendent of the company within two weeks of its date, and the premiums paid thereon would be refunded. It was also stated in said policy that the address of the superintendent of the district appeared on the premium receipt book covering the policy.

The third condition of the policy was as follows:

" Third—Unless otherwise stated in the blank space below in a waiver signed by the secretary, this policy is void if the insured, before its date, has been rejected for insurance by this or any other company, or has been attended by a physician for any serious disease or complaint; or has had before said date any pulmonary disease or chronic bronchitis, or cancer or disease of the heart, liver or kidneys; or if before said date any parent or brother or sister of the insured has died of any pulmonary disease or bronchitis or any scrofulous disease."

It appears that the policy containing these conditions was delivered to John W. Carson and was not surrendered for cancellation to the district superintendent within two weeks of the date of delivery, and by retaining the policy he accepted and adopted its provisions. On February 26, 1895, within one year of the date of the policy, John W. Carson died of acute pneumonia. This is undisputed. Under the charge of the learned judge in the court below it was left for the jury to say whether the plaintiff was entitled to $100 or to $50.00. It was contended on the part of the appellant that acute pneumonia was a pulmonary disease and under a correct construction of the policy the plaintiff could only recover the sum of $50.00. It was contended on the part of the appellee that if the word pulmonary was construed in its popular sense it would not include death from acute pneumonia.

Upon this question Dr. Max J. Reinhold, a witness for the plaintiff, testified as follows:

Q. You have heard this phrase "pulmonary disease" read. In the ordinary acceptation of the phrase as used by common people, what does "pulmonary disease" mean? A. Well, "pulmonary disease" means a disease of long standing. Q. What is the popular meaning of the phrase "pulmonary disease?" A. That is understood to be a chronic disease of the lungs, such as consumption, tubercular consumption, chronic bronchitis, emphysema, or any other chronic state of the lungs that existed for months or years.

Dr. S. S. Koser, another witness for the plaintiff, testified as follows:

Q. In the speech of the common people, or in its popular sense, what does "pulmonary disease" mean? A. It means a disease of the lungs, and it further means a protracted, long drawn out, a continuous disease of the lungs. Q. In other words, when you speak of "pulmonary disease" you generally mean some such disease as consumption? A. Yes, sir; consumption or chronic bronchitis, one of the chronic diseases. Q. Would you say that pneumonia is not understood by the common people to be a pulmonary disease? A. Not as the term "pulmonary" is used in the common parlance. Q. It is not understood to be a pulmonary disease? A. Not in the common English; strictly speaking it is a pulmonary disease, but not as used in life insurance, if that is what you mean.

This evidence was offered for the purpose of enlightening the jury as to the understanding of the parties, at the time the contract was entered into, of the terms used in the policy. To this offer of evidence there was no objection on the part of the appellant; it was admitted by the court, and in this there was no error. The first and second specifications of error are overruled.

By the third condition of the policy the assured had stipulated that prior to its date he had not been attended by a physician for any serious disease or complaint. The policy also provided that if the stipulation was untrue, the policy should be void.

The appellant offered to prove on the trial, by Dr. C. M. Bellows, that the insured was treated at the Williamsport Sanatarium for the disease of alcoholism, to be followed by other testimony by physicians that alcoholism is a serious disease. The court excluded the offer in the following language:

" I shall rule that out on the ground that it is not material unless you propose to follow it by evidence that he died of some disease produced by alcoholism. We will rule that out and seal a bill for you. It is very plain to my mind that nothing is important that did not affect the result. If this death resulted from any disease disconnected from that of alcoholism this is of no account, as it is an immaterial representation. Even if it was a misrepresentation it would be totally immaterial if it did not affect his life."

In his charge to the jury the learned judge in explaining the different causes producing pneumonia said :

" It may also have come from indiscretion or alcoholism, and that may be very sudden."

I know of no more apt language to illustrate the materiality of the evidence offered and rejected by the learned judge than the above quotation from his charge.

The parties to the contract by the very written stipulation settled for themselves its materiality. May on Insurance, par. 184. If the assured had been an inmate of an Inebriate Asylum or Keeley Cure and there treated for alcoholism, was it not material to the insurance company that it should know that fact in determining the risk ? The proposition answers itself and it is not our duty to pursue it further.

" The test of the materiality of a misrepresentation or concealment is that it influences the insurer in determining whether to accept the risk." May on Insurance, par. 184.

If John W. Carson prior to the date of the policy had been attended by a physician for any serious disease or complaint and had concealed that fact from the company, there could be no recovery, and the fact that he did not die from the disease for which he was attended has no proper place in the consideration of the question. It is idle to cite authorities to show the error of the learned judge on this point. The vigorous language of BLACK, C. J., in Hartman v. Keystone Ins. Co., 21 Pa. 477, is sufficient.

The reason assigned by the learned judge in the court below for the exclusion of the offered testimony was manifest error. But as the offer was framed, the testimony was properly excluded for the reason that it was not proposed to prove that the assured had been attended by a physician for a serious

disease or complaint prior to the issuing of the policy. If it was proposed to prove that he was so attended after the issuing of the policy, it was entirely immaterial under the clause in the policy referred to in the offer. We must treat the offer, as presented in the court below, and as it was not limited or directed to a time prior to the issuing of the policy, the testimony was properly excluded. The third assignment of error is overruled and the judgment is affirmed.