# Csizik v. Verhovay Sick Benefit Assn., Appellant.

*Practice, C. P.—Amendment—Names of parties—Act of May 4, 1852, P. L. 574—Beneficial associations.*

Amendments in the names of the parties which do not change the cause of action, and are made before the statute of limitations has run are permitted under the Act of May 4, 1852, P. L. 574.

Where an action is brought against a beneficial association by a husband as the beneficiary, and the defendant, which has the application designating the beneficiary in its possession, contends that the heirs at law are the beneficiaries, and the record is then amended so as to add the guardian of a minor the only other heir at law, and this causes a continuance of the case, the defendant will not be permitted at the subsequent trial to allege that the husband was the only beneficiary, and therefore the rightful plaintiff.

*Beneficial associations—Health of applicant—Warranty.*

Slight troubles, temporary and light illness, infrequent and light

attacks of sickness, not of such character to produce bodily infirmity or serious impairment, or derangement of vital organs, do not disprove the warranty of good health in an application for membership in a beneficial association.

Where an application for membership in a beneficial association states that the applicant is healthy, and the certificate of the association's medical examiner, approved by the officers, sustained his statement, and it appears that the member subsequently died of pleuro-pneumonia, the association may show that the insured was afflicted with consumption when the application was made, but mere declarations of the deceased and her husband to that effect will not overthrow the certificate of good health, and this is especially so where there is proof that such declarations were made after the application had been signed.

Argued March 4, 1915. Appeal, No. 13, March T., 1915, by defendant, from judgment of C. P. Lackawanna Co., May T., 1911, No. 280, on verdict for plaintiff in case of Andrew Csizik, et al., v. Verhovay Sick Benefit Association. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit to recover death benefits. Before NEW-COMB, J.

At the trial the defendant alleged that the deceased and her husband had made misrepresentations as to her health contrary to the statement in the application that she was healthy.

When Joseph Balla was on the stand he was asked this question:

Mr. Vosburg. Q. Did you have any talk with her about this time as to her health? A. She was talking about her health to my wife and I was listening to it. Q. What did she say?

Mr. Fitzgerald. What is the purpose of this inquiry?

Mr. Vosburg. To show what she admitted herself.

The Court. You have got to prove that this woman was ailing in some other way. The objection is sustained.

Exception. (4)

Mr. Vosburg. I offer to show by Joseph Balla that he had known Andrew Csizik for a long time; that he had a talk with him shortly before Mrs. Csizik applied for membership in the defendant society and that Mr. Csizik told him at that time that his wife's health was very bad, she was suffering from consumption; and this was before the application was made.

Mr. Fitzgerald: The offer is objected to as immaterial, irrelevant and incompetent.

The Court: What is the purpose of this offer?

Mr. Vosburg: As tending to show fraud in the procurement of the certificate and the violation of the provisions of the by-laws relating to the health of the party insured.

The Court: The objection is sustained. Exception. (5)

Mr. Vosburg: We make this offer as to Andrew Szmerik that in the month of April, of 1910, he met Andrew Csizik, husband of Mrs. Csizik, who told him at that time that his wife was very sick; that she was coughing a great deal and that she was suffering from consumption.

This for the purpose of showing that a fraud was practiced in the procurement of this certificate; and that the condition of health of the assured was not at that time such as to warrant her being received as a member under the by-laws.

Mr. Fitzgerald: The counsel for the plaintiff objects to the offer as immaterial, irrelevant, and incompetent.

The Court: Exception. (6)

By Mr. Vosburg: The counsel for the defendant propose to prove by the witness, Alex. Cabr, on the stand that he is the supreme president of the defendant society. and was at the time when the application was made and certificate issued in this case. We propose to identify by him the application which was forwarded upon the basis of which the certificate was issued and have him translate the same into English, this certificate showing

that the beneficiary designated her husband, Andrew
Csizik, as the beneficiary to whom the insurance should
be paid. For the purpose of showing that the present
plaintiffs are not the beneficiaries named by the contract
of the parties, therefore, they cannot recover.

Mr. Monaghan: The offer is objected to as immaterial
and irrelevant.

The Court: What was it that occasioned the plea of
surprise and the withdrawal of a juror? The answer of
the defendant's counsel is that it was made by defend-
ant's counsel and on their motion that under the terms
of the by-laws the beneficiaries were heirs-at-law of the
insured and, therefore, the suit was improperly brought
on behalf of the surviving husband.

Mr. Vosburg: I would like to add to that this: That
at that time the application which was written in the
Magyar language had not been translated and neither the
counsel nor the court was familiar with the fact that the
husband was named as beneficiary in that application.

The Court: Evidently the court took your view of it
and adopted your contention, that it was the children
and not the husband who were entitled to sue. It would
seem to me that under those circumstances you are now
estopped from shifting your ground and taking a po-
sition exactly the reverse of that. The defendant, in this
first instance, when this case came to trial on the issue,
having taken the ground that as a matter of law the by-
laws now in evidence, governed the question sought to
be raised by the offer to which objection is made, I am of
opinion that the defendant company is estopped from
reversing its position and taking the contrary ground
now for the purpose of defeating the present plaintiff's
right to recover, upon the theory that the terms of the
application govern rather than the terms of the by-laws
upon which it relied in the first instance, and therefore
the objection is sustained.

Exception noted for the defendant. (7)

Mr. Vosburg: The counsel for the defendant proposes

470 CSIZIK *v.* VERHOVAY SICK B. ASSN., Appellant.

Statement of Facts—Charge of Court below.   [60 Pa. Superior Ct.

to prove by the witness on the stand, Hemena Markovitz, that Mrs. Csizik told her at the time that when her application was taken in for membership in the defendant society she was in very poor health, but that John Gergas, the chairman, and her husband insisted on taking her in, and that she knew at that time she was not in a physical condition so that she could become a member.

Mr. Fitzgerald: The offer is objected to for the same reason; and for the further reason the witness has answered she had no such conversation.

The Court: At the present time there is no basis for any such declaration.   The objection is therefore sustained, without prejudice to your right to inquire later on, if further developments warrant it.

Exception noted for the defendant.   (8)

Louis Gergas was asked the question:

Mr. Vosburg: Q. How near to this time when she applied for membership that you heard about it, did you see her? A. May be a week or two weeks I seen her.

Q. Before or after. A. After.

Q. Could you describe her appearance as to health when you last saw her before that time?

Mr. Fitzgerald: The question is objected to.

Mr. Vosburg: Q. Did you have any talk with her about this time as to her health?

A. She was talking about her health to my wife and I was listening to it.

Q. What did she say?

Mr. Fitzgerald: The question is objected to.

The Court: What is the purpose of the inquiry?

Mr. Vosburg: To show what she admitted herself.

The Court: You have got to prove that this woman was ailing in some other way.   The objection is sustained.

Exception.   (10)

Court charged in part as follows:

[It is undisputed that there was an examination, an examination by Dr. Bilheimer, who is now dead, and that

he certified, in brief, that he had examined the woman and found her in fairly good health. To your mind or my mind or the mind of many another person that might seem to be somewhat equivocal, and if we were concerned in a financial way about her health we might feel constrained to inquire a little more carefully; but of that the parent society here was the judge. The certificate went to its officers, spoken of in some of the papers here as the "supreme officers," and they sat in judgment upon it and it proved to be satisfactory to them and they accepted it, and upon the faith of it they issued this certificate to the woman. According to my understanding of the by-laws, which formed part and parcel of this contract, and governed both parties, the surviving members of this woman's family, on the one side and the insuring society, on the other, when they accepted that certificate it was decisive of the question whether she was insurable within the meaning of their organic law, so we must treat her as insurable.] (10)

Verdict and judgment for plaintiff for $952. Defendant appealed.

*Errors assigned,* among others, were (4-9) rulings on evidence quoting the bill of exceptions and (10) above instructions quoting them.

*C. A. Battenburg* and *A. A. Vosburg,* for appellant.— We contend that the substituted plaintiffs, the children of Barbara Csizik, had no right of action against the defendant: Compton's Est., 25 Pa. Superior Ct. 28; Menovsky v. Menovsky, 19 Pa. Superior Ct. 427; Thomeuf v. Knights, Etc., 12 Pa. Superior Ct. 195.

The evidence of the witnesses as to the ill health of the insured at the time of the issuance of the certificate, was admissible: Alta Friendly Society v. Brown, 8 Pa. Superior Ct. 267; Dinan v. Supreme Council, Etc., 201 Pa. 363; Donleavy v. Shield of Honor, 11 Pa. C. C. R.

477; Dickinson v. A. O. of United Workmen, 159 Pa. 258; Suravitz v. Prudential Ins. Co., 244 Pa. 582.

It seems to us that the statements made by the insured as to her physical condition were plainly competent: Allen v. McMasters, 3 Watts 181; Taylor v. Gould, 57 Pa. 152; Galt v. Smith, 145 Pa. 167.

*O'Brien & Kelly* and *F. W. Monaghan,* for appellee.— Where a man alleges a fact in a court of justice, for his advantage, he cannot be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice: Willis v. Kane, 2 Grant 60; Patterson v. Lytle, 11 Pa. 53.

The applicant is not bound to know the existence of latent disease: Suravitz v. Prudential Ins. Co., 244 Pa. 582.

The admission sought to be shown must be of something material and relevant to the question at issue: Simons v. Vulcan Oil, Etc., Co., 61 Pa. 202.

OPINION BY KEPHART, J., July 21, 1915:

This action was brought by the husband as the beneficiary. Appellant contended that the heirs at law were the beneficiaries and the action should have been brought by them. The application designating the beneficiary was in foreign language, not easily translated, and in the appellant's possession. Appellee moved to amend by adding as a party plaintiff the guardian of a minor child, who, with husband, were the heirs at law. Amendments in the names of the parties which do not change the cause of action (Wildermuth v. Long, 196 Pa. 541; Garman v. Glass, 197 Pa. 101), and are made before the statute of limitations has run, are permitted under the Act of May 4, 1852, P. L. 574; Kaylor v. Shaffner, 24 Pa. 489; Fritz v. Heyl, 93 Pa. 77. This amendment did not violate either of these rules and was properly allowed.

After the appellant had succeeded in forcing this

amendment and causing a continuance of the case, at the second trial it comes into court and alleges that the husband was the only beneficiary, therefore the rightful plaintiff. The administration of justice cannot be trifled with in this manner. The appellant had every opportunity to know at the first trial who the real plaintiff should be.. It is now estopped. "That a party should be estopped, under such circumstances, from showing the truth, is an equitable, as well as a legal principle; for where a person has the benefit of a defense, as far as it serves his turn, good faith and fair dealing require, as between the same parties, that he should not be allowed afterwards to repudiate it, when it makes against him": Kelly v. Eichman, 3 Wharton 419. "If, then, the defendant had been allowed to defend the second action by alleging that his first plea and assertion, upon the faith of which the justice acted, was false, and that the first action was rightly brought, it would have been the triumph of a mere juggle and cheat, and would have subjected the tribunal of justice to the chicanery and falsehood of one party, to the injury and loss of the other: Patterson v. Lytle, 11 Pa. 53; Willis v. Kane, 2 Grant, 60. Inasmuch as all possible parties appear on the record as parties plaintiffs, the appellant cannot be injured.

The by-laws of the association provide that, "Every respectable white Christian man or woman may become a member of the association who is not below the age of 16 and not above 45, if he is found, on the ground of medical examination, resp. certificate, healthy, physically and mentally." The court held that in so far as the health of the insured entered into or was a condition precedent to the contract, it was made to depend upon the report of the medical examination made by the physician, subject, however, to the approval of the proper officers of the association as provided in the by-laws; that such examination did not require declarations to be made by the insured as to her health. There

is nothing in the paragraph referred to which specifically requires the insured to make any statements to the examiner as to the condition of her health. It is contended by the appellant that the language of this paragraph is broad enough to include the actual physical condition of the applicant, regardless of what the examiner's certificate may contain; and if, as a fact, the insured was not healthy within the meaning of that word, it could be so shown, as the insured was impliedly required to state the condition of her health to the examiner. Without deciding the proper interpretation to be given the paragraph as to what the duties of insured were, and the presumption arising from failure to perform those duties, and considering the questions in the light of appellant's contention, were the offers of evidence to establish ill health properly excluded by the trial court?

"Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such character to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. In other words, the term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void": Barnes v. Fidelity Mutual Life Assn., 191 Pa. 618. "In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon the general health and the continuance of life, or such as according to common understanding would be called a disease; and such has been the opinion of text writers and judges": Baldi v. Insurance Co., 18

Pa. Superior Ct. 599.   Considering the paragraph by the rule as here laid down, "healthy" would mean that the applicant had no grave, important and serious disease and was free from an ailment that seriously affects the general soundness and healthfulness of the system.   Appellant endeavored to show that the insured was afflicted with consumption when the application was made; and if successful this would bring the case within the prohibition of this clause of the policy.   The proof of loss shows that the insured died of pleuro-pneumonia, but this fact would not prevent the appellant from showing that at the time the insured applied for membership she was afflicted with another disease not within the meaning of the term "healthy" as used in this paragraph: Hartman v. Keystone Ins. Co., 21 Pa. 466; Carson v. Metropolitan L. Ins. Co., 1 Pa. Superior Ct. 572.   Appellant does not seek to establish the existence of this disease by any medical testimony, although it is quite well known that the disease can only be determined with certainty by a strict medical examination by one skilled in diagnosis or the use of the microscope.   It cannot be ascertained by a superficial physical examination nor from a heavy cold nor from a somewhat emaciated appearance.   This condition, with coughing, may follow a bad spell of croup, cold, chronic bronchitis, an abscessed chest, or many minor illnesses.   Had the existence of this disease been developed from competent medical evidence, or evidence having the sanction of medical authority, it may be that the declarations of the insured would then be competent evidence, as showing the continued existence of the conditions upon which the medical examiner made his diagnosis.   There would be some foundation for the statement of the insured that she had this disease, and such knowledge concealed would be a fraud upon this defendant association.   Furthermore, as against the certificate of a man skilled in medicine, these declarations as testified to by friends, and this supposed evidence of appearance, would not be

sufficient of themselves to overthrow this certificate of good health furnished by this man and approved by the officers of the association.    The offer, in connection with the evidence of Louis Gergas, did not fix with any reasonable certainty the time when the alleged declarations were made, and Mrs. Markovitz, another witness, fixed the time after the application for membership had been written.    As to the declarations of the husband, made before the policy of insurance was written, that his wife was afflicted with this disease, it is subject to the same objection as that of the declarations of the wife, with this addition, that it is not shown that the husband was experienced in the practice of medicine.    Any declaration which he might make must necessarily have been based upon what some person told him, and the fact still remains that the disease was not proven to have actually existed by any competent medical authority.    For these reasons we think the evidence was properly excluded.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.