## Pennsylvania Railroad Co. *versus* Fortney *et al.*

1. In an action on the case, to recover damages for the death of one alleged to have been killed by the negligence of a railroad company, if the undoubted evidence clearly shows any fact which proves the deceased was guilty of concurring negligence, the court should say there can be no recovery; but if the fact relied on to establish negligence is doubtful, the case should be submitted to the jury.

2. While it is true, as a general rule, that a party cannot be permitted to impeach the veracity of his own witness, yet he may disprove the facts to which his witness has testified.

May 20th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON and TRUNKEY, JJ. PAXSON, WOODWARD and STERRETT, JJ., absent.

Error to the Court of Common Pleas of *Dauphin county*: Of May Term 1879, No. 156.

Case by the widow and children of David Fortney against the Pennsylvania Railroad Company, to recover damages for the death of said David Fortney, alleged to have been caused by the negligence of defendant.

The facts are substantially set forth in the opinion of this court. In the court below, after the plaintiffs had submitted all their evidence, the defendant moved for a compulsory nonsuit, on the ground of negligence by the deceased, as shown by the plaintiff's own witnesses. The court (Pearson, P. J.,) overruled the motion.

The defendant presented the following points, to which are appended the answers of the court:

1. It was the plain duty of David Fortney to stop, look and listen, before undertaking to pass over or on the railroad-track; and the rule requiring him to do so is an unbending one; and the train not being on schedule time was no excuse for his failure to do so; and there being no dispute about the facts the verdict must be for the defendant.

Ans. "We do not answer that as requested. We say this. It is the bounden duty of a person crossing the railroad to stop, look and listen. Did the deceased stop? That he did is proved by that boy. He stopped there on the margin on the road. Did

he look ? Did he listen ? are questions of fact. That he stopped is sworn to. Did he look ? If he did, could he have seen ? which is a question for the jury. If you are satisfied that he didn't take the pains and trouble, when it was his duty to look, and could have seen, then he is not entitled to recover; for he ought not to have gone on the track if he could have seen the train by looking."

2. The plaintiff having affirmatively shown that the deceased could have seen the approaching train for at least three hundred feet from a point outside of all the tracks, it was his plain duty to have stopped there, and looked and listened; and his neglect to do so was such negligence on his part as precludes a recovery.

Ans. "If the jury find the facts assumed, then the law is as stated. It was his duty to stop and look and listen. If he did not stop and look and listen, he was guilty of contributory negligence. If he stopped and looked and listened, and had no reason to suppose that the train would come at all, and inadvertently stepped across the track, then it would be different. But it was his duty to look as well as stop; and if he could look and see it was his duty to do both."

3. The duty of stopping and looking and listening is quite as imperative where an approaching train cannot be seen or heard as where it can. The fact of collision shows the necessity for a compliance with the rule; and, therefore, in every case of collision where the measure of duty is defined, a failure to perform it is negligence in law, and must be so declared by the court.

Ans. "This point is properly taken. It is the duty of a person to stop, look and listen, and it was the duty of the deceased, whether he thought the train was due or not, to take all these necessary precautions."

4. It is greater negligence to stop on the track of a railroad than a mere omission to stop, look and listen; and the plaintiffs having proved that the deceased did so stop for a period of about fifteen minutes at the time he was killed, he was clearly guilty of contributory negligence, and the court is requested to give binding instructions to the jury that the verdict must be for the defendant.

Ans. "That would be so if he stopped on the track on which the cars ran, but if on the siding or between the tracks, it would not be dangerous *per se ;* but when he stepped forward the collision doubtless took place. While he stood back on the other track, it could not take place. Whilst he stood between the tracks it could not, unless the cars were close enough to reach him ; and it was testified that the cars were a little wider than the bumper. If he stood that far forward, then he would be guilty of clear negligence; but if he was standing back on the other track, I do not think it was negligence of itself, and would depend then on the circumstances of the case." ·

5. The defendant has the right to a clear track, and to run its

[Pennsylvania Railroad Co. *v.* Fortney.]

trains as far apart, or as close together as it chooses; for its use of its own road is its right, of which the public are bound to take notice; and whether the trains are on schedule time or not, does not alter the duty of a traveller on a public highway.

Ans. "The law is as stated. They have the right to run their trains as close together as they please. They do it at their own risk and peril; for if by running their trains too close together collisions take place they would be responsible to the passengers, and be liable for heavy losses. But they have the right to a clear track except at crossings; and at crossings probably others have the same rights as the railroad company. Both are to be careful. Both have a right to the crossing. Both must be equally careful, though persons crossing, having the power to stop more easily than a heavy train, must stop, look and listen, as we have already said to you several times."

7. No neglect of duty on the part of a railroad company will excuse any person approaching on a highway, or crossing of the track of such company, from using the senses of sight and hearing; and as the plaintiffs have shown that had David Fortney exercised such senses he would have seen the approaching train, there can be no recovery in this case.

Ans. "We have said several times over that the law is that it was his duty to stop, look and listen. We say that the duty is as stated, but whether performed or not, is for the jury. It is for the jury whether he performed his duty in stopping and looking and listening. There is no doubt that he stopped, according to the evidence; but if he had stopped and looked and listened with care, he might probably have heard it. That is for the jury. If the deceased had no reason to suppose that the train was running at that time, he might not look. If it habitually varied in time through the winter, and deceased knew it, the necessity of looking and listening was as important as in any other case. He was just as much bound to look and listen, if he knew of its being out of time, as at any other time. The trains varying in time, and he knowing it, there would be no excuse for not looking. If the deceased thought he could get across ahead of the train, after looking at it, and missed, he must take the consequences. If a man sees a train coming, and thinks he can step across before it can reach him, and is mistaken in that, it is his own fault."

The verdict was for plaintiffs for $400, when defendant took this writ, and assigned for error the refusal of the nonsuit and the answers to the above points.

*Hall & Jordan*, for plaintiff in error.—The plaintiff's evidence showed a clear case of contributory negligence, and the court should have directed a verdict for the company.

[Pennsylvania Railroad Co. *v.* Fortney.]

*J. M. Wiestling,* for defendants in error.—It would have been error for the court not to have submitted the case to the jury, because,

1. That in doing so they would necessarily have decided that Jefferson Antrim's testimony was unworthy of credit, a question exclusively for the jury.

2. That if Antrim's testimony was to be relied upon, there could be no pretence that deceased was guilty of contributory negligence, as the presumption of law in his favor would establish the contrary, and hence the court could not have held otherwise.

3. That even with Antrim's testimony out of the case, it was the province of the jury to say, under all the circumstances, whether the man seen by Rife was in a place of danger and guilty of contributory negligence.

Mr. Justice MERCUR delivered the opinion of the court, October 6th 1879.

This case presents substantially one question only: that is, whether the court erred in submitting the evidence to the jury?

If the undoubted evidence clearly showed any fact which proved David Fortney guilty of concurring negligence, the court should have said there could be no recovery: Pennsylvania Railroad Co. *v.* Ogier, 11 Casey 60; Catawissa Railroad Co. *v.* Armstrong, 2 P. F. Smith 282; Pittsburgh & Connellsville Railroad Co. *v.* McClurg, 6 Id. 294; McKee *v.* Bidwell, 24 Id. 218. If, however, the fact relied on to establish negligence was doubtful, the case was properly submitted to the jury. What, then, is the evidence relied on to convict the court of error?

It is shown that four tracks of the railroad of the plaintiff in error cross Wood street, in the borough of Middletown, the two central ones being main tracks, and the two outside, only sidings. Fortney lived south of the railroad, and was employed in a furniture manufactory, situate north of the railroad. Just before daylight he started from his house and walked along Wood street towards the place of his employment. At this crossing he was struck and killed by the express train, passing easterly on the main south track. No witness saw it strike him, but his body was soon afterwards found, lying between this main track and the siding, about two hundred yards east of the crossing. It had evidently been carried there by the moving train.

The counsel for the plaintiff in error claims that the concurring negligence of Fortney is clearly established by the evidence of Harry Rife, a witness on the part of the defendants in error. An examination of his evidence shows he testified substantially that on the morning of the accident he stood near this crossing, and on the north side of the tracks, and by the headlight of the locomotive of

the approaching westerly bound freight train he saw a man standing still, between the south main track and the siding, at this crossing; he did not recognise the man, and was unable to describe his clothes; he first saw the man when the locomotive was about thirty-five yards east; that he noticed everything particularly, and thought the man was in a dangerous place and would be killed; that the man continued standing there until the headlight intervened between him and the witness.

In reply to the question, how long he saw him standing there, witness answered, "I could not tell how long; about fifteen minutes or so." That when the rear of the freight train got about five yards west of Wood street, the engine of the express train going east reached the street. Soon after this last train passed he saw the body of Fortney lying where we have stated. From the order of events, and the place where the body was found, he appears to have no doubt that Fortney was the man he saw standing between the tracks. If Fortney remained standing there for fifteen minutes, or one-fourth that time, before the freight train passed, and continued there so close to the main track as to be struck by the express train, we have no hesitation in saying that he was guilty of concurring negligence. It appears the bumping-board, to which the cow-catcher is attached, projects two and a half feet over the rail, and the cars about the same distance. Fortney was familiar with this crossing, and at one time had been in the employ of the railroad company as a switch-tender near by. Is this position of Fortney between the tracks, for the length of time stated by Rife, proved with sufficient certainty, to be beyond reasonable controversy? Rife testifies, he does not know how long a time the freight train occupied in passing over the thirty-five or fifty yards, after he first saw the headlight. No witness testifies to the time. Antrim swears, he supposes it was running about four or five miles an hour. If he be correct, it is manifest that Rife must be mistaken as to the interval of time which passed between his first seeing the headlight, and its crossing the street. The evidence of T. Jefferson Antrim proceeds to throw more doubt on the accuracy of Rife's evidence. Antrim was also a witness in behalf of the defendant in error. He testifies that he was a telegraph operator, in the employ of the company, at Highspire; on the morning in question, he walked down Wood street to the crossing, for the purpose of taking the freight train west to Highspire; that on his way he passed Fortney, who was also walking towards the railroad; that he, Antrim, and the freight train, reached the crossing about the same time, or the train was there when he reached the railroad, that is, the engine was at Wood street; he walked to the crossing turned to the west, and stepped on the engine west of Wood street, and went up on that train. If Antrim be correct when he says he walked past Fortney about a square

from the railroad just before the engine of the freight train reached the crossing, it is clear that the latter was not then standing between the main track and the siding. It would clearly be error for the court to have assumed, under this conflict of evidence, that Rife was undoubtedly correct. It was urged, however, inasmuch as Rife was a witness of the defendant in error, that his statement of the length of time Fortney stood between the tracks, cannot be controverted by the party calling him.

It is true, as a general rule, a party cannot be permitted to impeach the veracity of his own witness, yet, he may disprove the facts to which his witness has testified. Therefore, no rule nor policy of law forbade the defendants in error proving that Rife was mistaken as to the length of time Fortney stood in that dangerous position. If Antrim be correct, the jury may well have found that Fortney reached the place where he was struck, either while the freight train was at the crossing, or at the instant of its moving therefrom. If so, in view of the fact, that the express train was behind time, and there was some evidence that it was moving at unusual speed, we cannot say, as a matter of law, Fortney was guilty of negligence in attempting to cross the tracks. Whether, under all the evidence, he was guilty of concurring negligence, was well and clearly submitted to the jury by the learned judge.

Judgment affirmed.