## Evans *v.* Penn Mutual Life Insurance Company of Philadelphia, Appellant.

548

Argued January 30, 1936; reargued April 14, 1936.
Before Kephart, C. J., Maxey, Drew, Linn, Stern and
Barnes, JJ.

*Harvey H. Steckel*, with him *William S. Hudders*, for appellant.

*David Getz*, with him *Groman & Rapoport*, for appellee.

OPINION BY MR. JUSTICE DREW, June 26, 1936:

Plaintiff is the beneficiary of a policy of insurance issued by the defendant company on the life of her son, Edward W. Evans. The policy was issued, without a medical examination, on April 29, 1932, at which time Evans was 21 years old and was employed as right of way agent for the Bell Telephone Company. He died on the following August 9th. The certificate of the attending physician stated that the immediate cause of death was cerebral hemorrhage and the duration of the last illness was one day. Upon due notice and filing of proofs of death, defendant offered to return the amount of premium paid, $17.46, but denied further liability on the ground of false representation in the application. In plaintiff's suit for the face amount of the policy two trials were had, each of which resulted in a verdict in plaintiff's favor. The present appeal followed the entry of judgment upon the second verdict.

The statements upon which defendant relies are contained in the following questions and answers appearing in the application, which was executed on April 19, 1932: "17. D. Have you had any other illness or injury? No. E. Have you, or have you ever had, vertigo, appendicitis, rheumatism, heart disease, Bright's disease, lung disease, or any other disease or infirmity? No. 18. Have you ever been disabled or had any medical or surgical treatment, or X-rayed for treatment, disease or diagnosis, other than as stated by you above? If so, full details. No. 19. Are you aware of any circumstances

connected with your own health or that of your family which might affect the risk of insurance on your life? No."[1] Defendant averred that these answers were false and were known by Evans to be false when he made them and that in fact he had, five or six years prior to the date of the application, suffered dislocation of a vertebra near the base of the brain, that he had thereafter had several similar dislocations, and that one of these dislocations ultimately led to his death. It was further averred by defendant that during the five years preceding his death Evans had received medical treatment from three doctors, all of whom had treated him for the various dislocations. Plaintiff in reply denied that insured had suffered dislocation of a vertebra or any other injury, or that insured had at any time been paralyzed, as defendant had averred, or otherwise disabled or had any medical or surgical treatment. Plaintiff's reply likewise stated that "one of the vertebræ would sometime get out of its rigid position in the spinal column which was promptly restored by osteopathic treatment and massage." The pleadings thus presented issues of fact for determination by the proper tribunal.

In view of the frequency with which cases of this sort have been arising, we consider it advisable to restate here the chief principles applicable to this type of case, in the hope of making our position in the matter clearer and thereby affording additional guidance to lower courts and to litigants in the disposition of this kind of litigation.

The policy in suit contained the usual provision that all statements made by insured or on his behalf should be deemed representations and not warranties. The contention has been made that false statements material to the risk avoid the policy in a case of this sort, as well as

---

[1] The application also stated: "10. A. Are you now in good health? Yes. B. When were you last attended by a physician or consulted one? December, 1931. C. For what disease? Bercitis. D. Give details in full. Housed up two weeks."

where the statements are warranted to be true.[2] It is true that in some of the older cases[3] that rule has been applied apparently without a consideration of whether the statements were in fact representations or warranties, although those cases may well be explained by the fact that at that time most if not all policies did expressly provide for a warranty of the truth of the statements in the application. In our recent cases, however, it has been made very clear, at least since *Suravitz v. Prud. Ins. Co.*, 244 Pa. 582, that, where the statements are made representations, the test of recovery is the good faith of the insured in making them: *Skruch v.*

---

[2] In the following cases it was held that a policy was avoided by the falsity of statements material to the risk, where the statements were warranted by insured to be true, or where it was expressly provided that the falsity of such statements avoided the policy: *United Brethren Mut. Aid Soc. v. O'Hara*, 120 Pa. 256; *Mengel v. Northwestern Mut. Life Ins. Co.*, 176 Pa. 280; *Wall v. Royal Society*, 179 Pa. 355; *Smith v. Northwestern Life Ins. Co.*, 196 Pa. 314; *Murphy v. Prud. Ins. Co.*, 205 Pa. 444; *Rinker v. Ætna Life Ins. Co.*, 214 Pa. 608; *Rigby v. Metro. Life Ins. Co.*, 240 Pa. 332; *Timlin v. Am. Patriots*, 249 Pa. 465; *Moncur v. Western Life Ind. Co.*, 269 Pa. 213; *Koppleman v. Com. Cas. Ins. Co.*, 302 Pa. 106; *Applebaum v. Life Assur. Soc.*, 311 Pa. 221. In such a case knowledge of the falsity is immaterial: *Dinan v. Supreme Council*, 201 Pa. 363; *Stein v. N. Y. Life Ins. Co.*, 319 Pa. 225, 228. However, the warranty may be that insured has not consciously or wilfully falsified his answers, in which case his knowledge of their falsity must be shown: *Keatley v. Travelers' Ins. Co.*, 187 Pa. 197.

In so far as it may be defined at all, the essence of the distinction between warranties and representations may be broadly said to be that the former are part of the terms of the contract itself, whereas the latter are merely collateral thereto, being part of the negotiations preceding and resulting in the completion of the contract. See *Couch on Insurance*, section 818; *Cooley's Briefs on Insurance*, chapter XII, section 1(a).

[3] E. g., *March v. Metro. Life Ins. Co.*, 186 Pa. 629; *Lutz v. Metro. Life Ins. Co.*, 186 Pa. 527; *Meyer-Bruns v. Penna. Mut. Life Ins. Co.*, 189 Pa. 579. It should be observed that the opinion in the *March* case, while not pointing out that the statements relied on were made warranties, seems to assume that they were. The *Lutz* case was decided in reliance on the *March* case.

*Metro. Life Ins. Co.,* 284 Pa. 299; *Livingood v. N. Y. Life Ins. Co.,* 287 Pa. 128; *Kuhns v. N. Y. Life Ins. Co.,* 297 Pa. 418; *Lilly v. Metro. Life Ins. Co.,* 318 Pa. 248; *Stein v. N. Y. Life Ins. Co.,* 319 Pa. 225.[4] In the *Suravitz* case, at page 586, and again in *Skruch v. Metro. Life Ins. Co.,* supra, at page 302, we said: "In our opinion the change in the covenant from a warranty to a representation was intended to broaden the scope of inquiry in such cases so as to give relief to parties who in good faith take out policies of insurance, from the harshness, and in many instances the injustice, of the old rule applicable to warranties. If this be the correct view, and it is certainly the just and equitable one, we can see no reason for limiting the inquiry to the single question of the materiality of the answer. Whether true answers were made, and whether the answers as made were correctly written down by the agent of the insurance company, and the good faith of the party making the an-

---

[4] See also *Oplinger v. N. Y. Life Ins. Co.,* 253 Pa. 328, 331; *Feinberg v. N. Y. Life Ins. Co.,* 256 Pa. 61, 66; *Baer v. State Life Ins. Co.,* 256 Pa. 177, 185; *Suravitz v. Prud. Ins. Co.,* 261 Pa. 390, 404; *Campdon v. Cont. Assur. Co.,* 305 Pa. 253, 257; *Mellosky v. Eureka-Md. Assur. Corp.,* 93 Pa. Superior Ct. 314, 317; *Gimbel v. Ætna Life Ins. Co.,* 95 Pa. Superior Ct. 1, 5; *Baxter v. N. Y. Life Ins. Co.,* 115 Pa. Superior Ct. 287, 290.

An examination of cases in other jurisdictions and of other authorities shows clearly that they are not in entire harmony as to whether the misrepresentation must be with intent to deceive or whether it is sufficient to show a false statement material to the risk. Cf. *Couch on Insurance,* sections 818, 824 ff.; *Cooley's Briefs on Insurance,* chapter XII, sections 1-2; 32 *C. J.* 1286. It is suggested that the confusion arises from a failure to keep clearly in mind and to apply consistently the distinction in result between representations and warranties, as well as from the fact that a gradual change in the language of policies, from that of warranty to that of representation, and in the attitudes of various courts toward the relation between insurer and insured has been taking place. The recent cases in this jurisdiction have certainly shown a very clear and unmistakable trend toward broadening an insured's right of recovery, of which the insistence on good faith as the test in representation cases is perhaps the chief instance.

swers to the best of his knowledge and belief, are questions which go to the very essence of the insurance risk, and parties should not be denied the right to have such matters determined before a proper tribunal unless they have covenanted otherwise. As to warranties the general rule is that the insured is concluded by his answer as it appears in the application attached to the policy, but as to representations no Pennsylvania case has gone so far as to hold that the same drastic rule should be applied, and no case has decided that the inquiry is limited to the single instance where the materiality of the answer is raised by the issue." And in *Livingood v. N. Y. Life Ins. Co.*, supra, it was said by Mr. Justice SADLER, at page 131, with reference to a provision that insured's answers were representations and not warranties: "Where the misstatement has been set forth inadvertently, or the narrative is incomplete in detail, and was made without intention of concealing the truth, a recovery is permissible, the question of good faith being for the jury."

The insurer must thus establish, in order to avoid the policy in the case of representations, that the statements relied on were falsely and fraudulently made. It is sufficient to show that they were false in fact and that insured knew they were false when he made them (see *Lilly v. Metro. Life Ins. Co.*, supra, page 251; *Stein v. N. Y. Life Ins. Co.*, supra, page 227), since an answer known by insured to be false when made is presumptively fraudulent.[5] Fraud may also be assumed from a showing that insured made false statements although fully aware that he did not know whether or not they were true, and that they had a tendency to and did mislead the insurer.[6] The circumstances preceding and attending the making of the statements may be such that the

---

[5] See *Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613, 622; *Couch on Insurance*, section 885 h, P. 2998.

[6] See *Couch on Insurance*, sections 818, 824.

insured must be said to have been aware of their falsity at the time, or that an inference of fraud is otherwise irresistible, as for instance where an unreported illness or disability of insured was so serious and so recent that he could not have forgotten it.[7]  The question of the materiality of the statement with regard to the risk involved is a relevant matter for consideration in determining whether a false answer was made with intent to deceive.[8] When the applicant states he is in good health and believes it to be so, though in fact he is suffering from some insidious disorder or latent disease of which he is not aware, a recovery may be had: *Suravitz v. Prud. Ins. Co.*, supra; *Livingood v. N. Y. Life Ins. Co.*, supra; see *Feinberg v. N. Y. Life Ins. Co.*, supra, page 66; *Baer v. State Life Ins. Co.*, supra, page 182.  Likewise, a mere showing of falsity of answers appearing in the application does not avoid the policy where the answers were not made by insured at all or with his knowledge but were supplied by someone else after the signing of the application, since in that case insured could not have known of their falsity at the time of the application and hence no bad faith is shown: *Stein v. N. Y. Life Ins. Co.*, supra; see *Feinberg v. N. Y. Life Ins. Co.*, supra.[9]  A similar result is reached where the answers were given in good faith by an insured who could not read, but were incorrectly recorded by the agent without the knowledge of the insured: *Suravitz v. Prud. Ins. Co.*, supra; *Camp-*

---

[7] *N. Y. Life Ins. Co. v. Brandwene*, 316 Pa. 218, 223; *Kzyszton v. John Hancock Mut. Life Ins. Co.*, 320 Pa. 65; *Gimbel v. Ætna Life Ins. Co.*, 95 Pa. Superior Ct. 1, 4; *Baxter v. N. Y. Life Ins. Co.*, 115 Pa. Superior Ct. 287, 294.

[8] see *Connors v. Nat. Council*, 210 Ill. App. 65; *Couch*, section 829a.

[9] The fact that the answers were supplied by another after insured had signed the application is of no avail, however, where good faith is not the test and the policy is avoided by breach of a condition, with reference to which the answers are integral parts of the contract: *Benzinger v. Prud. Ins. Co.*, 317 Pa. 561.

*don v. Cont. Assur. Co.*, 305 Pa. 253; see *Feinberg v. N. Y. Life Ins. Co.*,* supra. In any event, the controlling factor is the good faith of the insured, and the burden of showing fraud is on the insurer, who asserts it.[10]

Ordinarily the question of the truth or falsity of the answers and whether or not they were given by insured in good faith is for the jury.[11] Where it affirmatively appears, from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by insured under such circumstances that he must have been aware of their falsity,[12] the court may direct a verdict or enter judgment for the insurer. Facts sufficient to avoid the policy may appear from hospital records, where such records are competent evidence for that purpose and are not materially contradicted.[13] Likewise, uncontradicted

---

[10] *Feinberg v. N. Y. Life Ins. Co.*, 256 Pa. 61; *Suravitz v. Prud. Ins. Co.*, 261 Pa. 390, 400-401; *Livingood v. N. Y. Life Ins. Co.*, 287 Pa. 128; *Kuhns v. N. Y. Life Ins. Co.*, 297 Pa. 418; *Campdon v. Cont. Assur. Co.*, 305 Pa. 253; *South Side Trust Co. v. Eureka Life Ins. Co.*, 74 Pa. Superior Ct. 566; *Jackson v. State Mut. Ben. Soc.*, 95 Pa. Superior Ct. 56, 62; *Baxter v. N. Y. Life Ins. Co.*, 115 Pa. Superior Ct. 287.

[11] *Suravitz v. Prud. Ins. Co.*, 244 Pa. 582; *Baer v. State Life Ins. Co.*, 256 Pa. 177; *Livingood v. N. Y. Life Ins. Co.*, 287 Pa. 418; *Kuhns v. N. Y. Life Ins. Co.*, 297 Pa. 418; *South Side Trust Co. v. Eureka Life Ins. Co.*, 74 Pa. Superior Ct. 566; *Mellosky v. Eureka-Md. Assur. Corp.*, 93 Pa. Superior Ct. 314.

[12] *Gimbel v. Ætna Life Ins. Co.*, 95 Pa. Superior Ct. 1; *Baxter v. N. Y. Life Ins. Co.*, 115 Pa. Superior Ct. 287.

[13] *Panopoulos v. Metro. Life Ins. Co.*, 96 Pa. Superior Ct. 325; *Robinson v. Metro. Life Ins. Co.*, 99 Pa. Superior Ct. 152; *Sebastiani v. Ind. Order Foresters*, 106 Pa. Superior Ct. 525; *Sack v. Metro. Life Ins. Co.*, 115 Pa. Superior Ct. 430; cf. *McEntee v. N. Y. Life Ins. Co.*, 79 Pa. Superior Ct. 457; *Gimbel v. Ætna Life Ins. Co.*, 95 Pa. Superior Ct. 1; *Baxter v. N. Y. Life Ins. Co.*, 115 Pa. Superior Ct. 287. In these cases the records were corroborated by the uncontradicted testimony of physicians. The records must, of course, fully satisfy the requirements of the hearsay rule and

statements appearing in the proofs of death, if received in evidence generally, as admissions by adoption of the beneficiary,[14] or if otherwise competent to show the truth of the matters asserted therein, may establish facts which will justify the direction of a verdict in the insurer's favor.[15] Proofs of death, however, as well as hospital records, may be contradicted or explained, and the disputed issues thus raised are for the consideration of the jury.[16] Admissions in the pleadings may, of course,

---

other rules of exclusion, and must be properly admissible in evidence to show the truth of the matters asserted, in order to be available at all in this respect. See *Paxos v. Jarka Corp.*, 314 Pa. 148, 153 ff., where it was said, at pages 155-156: "We do not wish to be understood as holding that in no case can hospital records be produced, but, *except in extraordinary cases and then only where the three probative elements are present,* such records should not be received in evidence." See also *Harkness v. Swissvale Boro.*, 238 Pa. 544; *Com. v. Del Giorno*, 303 Pa. 509, 515.

[14] See *Wigmore on Evidence* (2d ed.), section 1073(4); *Couch on Insurance*, section 2227. Declarations made by the insured after the rights of the beneficiary have attached are not admissible: *Hermany v. Fidel. Mut. Life Assn.*, 151 Pa. 17; *Oplinger v. N. Y. Life Ins. Co.*, 253 Pa. 328; *Kuhns v. N. Y. Life Ins. Co.*, 297 Pa. 418.

[15] *Mengel v. Northwestern Mut. Life Ins. Co.*, 176 Pa. 280; *Siebelist v. Metro. Life Ins. Co.*, 19 Pa. Superior Ct. 221; *Furey v. Metro. Life Ins. Co.*, 49 Pa. Superior Ct. 592; *Russ v. Metro. Life Ins. Co.*, 98 Pa. Superior Ct. 353; *Palyo v. W. & S. Life Ins. Co.*, 114 Pa. Superior Ct. 583; *Sack v. Metro. Life Ins. Co.*, 115 Pa. Superior Ct. 430; *Roush v. Metro. Life Ins. Co.*, 116 Pa. Superior Ct. 162; see *Benseman v. Prud. Ins. Co.*, 13 Pa. Superior Ct. 363, 371; *Mitchell v. Alta Life Ins. Co.*, 116 Pa. Superior Ct. 490; *Couch on Insurance*, section 2227. In *Felix v. Fidel. Mut. Life Ins. Co.*, 216 Pa. 95, it was held that the proofs of death constituted prima facie evidence of suicide, sufficient to support a verdict for the insurer.

[16] *Fisher v. Fidel. Mut. Life Assn.*, 188 Pa. 1; *Felix v. Fidel. Mut. Life Ins. Co.*, 216 Pa. 95; *Jenkner v. Knights of Maccabees*, 243 Pa. 281; *Kuhns v. N. Y. Life Ins. Co.*, 297 Pa. 418; *Holleran v. Life Assur. Co.*, 18 Pa. Superior Ct. 573; *Baldi v. Metro. Life Ins. Co.*, 18 Pa. Superior Ct. 599; *Baldi v. Metro. Life Ins. Co.*, 24 Pa. Superior Ct. 275; *South Side Trust Co. v. Eureka Life Ins.*

establish facts to avoid the policy without the intervention of a jury.[17] But in any case, the questions whether or not the answers were false and whether or not they were given by insured in good faith are questions of fact, and their determination must be left in the jury's hands whenever the evidence concerning them is conflicting,[18] or whenever the burden of proving them is carried by oral testimony, even though such testimony is uncontradicted.[19] A recognized exception to the latter rule is of

*Co.*, 74 Pa. Superior Ct. 566; *Martin v. Prud. Ins. Co.*, 83 Pa. Superior Ct. 509; *Monaghan v. Prud. Ins. Co.*, 90 Pa. Superior Ct. 392; *Borgon v. John Hancock Mut. Life Ins. Co.*, 99 Pa. Superior Ct. 377; see *Benseman v. Prud. Ins. Co.*, 13 Pa. Superior Ct. 363, 371; *Furey v. Metro. Life Ins. Co.*, 49 Pa. Superior Ct. 592, 594; *Palyo v. W. & S. Life Ins. Co.*, 114 Pa. Superior Ct. 583, 588; *Sack v. Metro. Life Ins. Co.*, 115 Pa. Superior Ct. 430, 433; *Couch on Insurance*, section 2227.

[17] *Applebaum v. Life Assur. Soc.*, 311 Pa. 221; see *Couch on Insurance*, section 2208. As to the conclusiveness of averments in pleadings thus received in evidence, see *Bowen v. De Lattre*, 6 Whart. 429, 434; *Pgh. v. Pgh. Rys. Co.*, 234 Pa. 223, 232; *Ravenswood Bank v. Reneker*, 18 Pa. Superior Ct. 192, 196; *Abrams v. Uenking*, 81 Pa. Superior Ct. 422, 424; *Couch*, supra, section 2208.

[18] *Smith v. Metro. Life Ins. Co.*, 183 Pa. 504; *Barnes v. Mut. Life Assn.*, 191 Pa. 618, 623; *Wall v. Royal Society*, 192 Pa. 577; *Rigby v. Metro. Life Ins. Co.*, 248 Pa. 351; *Oplinger v. N. Y. Life Ins. Co.*, 253 Pa. 328; *Kuhns v. N. Y. Life Ins. Co.*, 297 Pa. 418; *Lilly v. Metro. Life Ins. Co.*, 318 Pa. 248, 252; *Holleran v. Life Assur. Co.*, 18 Pa. Superior Ct. 573; *Henegan v. Colon. Life Ins. Co.*, 63 Pa. Superior Ct. 616; *South Side Trust Co. v. Eureka Life Ins. Co.*, 74 Pa. Superior Ct. 566; *Martin v. Prud. Ins. Co.*, 83 Pa. Superior Ct. 509; *Borgon v. John Hancock Mut. Life Ins. Co.*, 99 Pa. Superior Ct. 377.

[19] *Nanty-Glo Boro. v. Am. Surety Co.*, 309 Pa. 236; *Lilly v. Metro. Life Ins. Co.*, 318 Pa. 248; *Fickes v. Prud. Ins. Co.*, 321 Pa. 474; *Brelish v. Prud. Ins. Co.*, 109 Pa. Superior Ct. 1; *Dzsujko v. Eureka-Md. Assn. Corp.*, 109 Pa. Superior Ct. 9; *Jones v. Metro. Life Ins. Co.*, 109 Pa. Superior Ct. 506; *Beyer v. Fidel. Mut. Life Ins. Co.*, 116 Pa. Superior Ct. 311. In *Reel v. Elder*, 62 Pa. 308, it was said by Mr. Justice SHARSWOOD, at page 316: "However clear and indisputable may be the proof when it depends upon oral testimony, it is nevertheless the province of the jury to decide,

course to be found in the situation where the uncontradicted testimony of a party's own witness establishes facts essential to his opponent's case. It is a fundamental doctrine in the common law that ordinarily a party may not, in the absence of surprise or other special circumstance, discredit his own witness or impeach his general credibility.[20] Since a party may not cast doubt upon his witness's veracity, he will not be heard to claim that the credibility of the witness's uncontradicted testimony must be tested by a jury. Even where the witness is an

---

under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence." See also *Bartlett v. Rothschild*, 214 Pa. 421, 427; *Snyder v. Bougher*, 214 Pa. 453, 459; *Second Nat. Bank v. Hoffman*, 229 Pa. 429, 433; *Lindemann v. Pgh. Rys. Co.*, 251 Pa. 489, 493; *Nydes v. Royal Neighbors*, 256 Pa. 381, 385; *McGlinn Distilling Co. v. Dervin*, 260 Pa. 414, 416; *Sorensen v. Quaker City Poster Adv. Co.*, 284 Pa. 209, 211; *Trainer v. Fort*, 310 Pa. 570, 577; *Henes v. McGovern*, 317 Pa. 302, 312; *Henry, Pennsylvania Trial Evidence* (2d ed.), section 467. While it is true that this rule has not always been strictly applied (e. g., *Timlin v. Am. Patriots*, 249 Pa. 465; see *Murphy v. Prud. Ins. Co.*, 205 Pa. 444, 453; *Dzsujko v. Eureka-Md. Assn. Corp.*, supra, page 15), it must now be considered settled in this jurisdiction, in view of *Nanty-Glo Boro. v. Am. Surety Co.*, supra, and other recent cases in accord therewith. "Credibility is the touchstone of testimony in the measure of its weight. . . . Testimony may bear the stamp of truth or the badge of fraud and perjury. Who is to pass upon its value? The jury alone. The court cannot invade the province of the jury. The court's supervisory control rests in the discretion to grant new trials": *Lindemann v. Pgh. Rys. Co.*, supra, 493; *Trainer v. Fort*, supra, page 577; *Henes v. McGovern*, supra, page 312.

[20] *Smith v. Price*, 8 Watts 447; *Bank of Nor. Liberties v. Davis*, 6 W. & S. 285, 287; *Stearns v. Merchants' Bank*, 53 Pa. 490, 492; *Peoples Nat. Bank v. Hazard*, 231 Pa. 552, 555; *Dinger v. Friedman*, 279 Pa. 8. "As a general rule a party who produces a witness thereby holds him out as being worthy of belief": *Henry, Pennsylvania Trial Evidence* (2d ed.), section 476. See *Wigmore on Evidence* (2d ed.), sections 896 et seq., for a full discussion and criticism of this rule.

adverse party, called as upon cross-examination, the party calling him is concluded by his testimony, if uncontradicted: *Readshaw v. Montgomery,* 313 Pa. 206, 209, and cases there cited. The facts thereby established are to be taken as true, and, if sufficient to avoid the policy, they may warrant the entry of judgment for the insurer.[21] But if the facts thus testified to are contradicted, as they may be,[22] the conflict is for the jury to resolve.

The jury's finding is of course always subject to the salutary power of the trial court to award a new trial if it should deem the verdict capricious or contrary to the weight of the evidence: *Reel v. Elder,* 62 Pa. 308, 316; *Beyer v. Fidel. Mut. Life Ins. Co.,* 116 Pa. Superior Ct. 311, 313. Evidence of the sort frequently offered by plaintiffs in cases of this kind is susceptible of abuse, and should be subjected to the closest scrutiny by the trial court, whose duty it is to grant a new trial without hesitation whenever satisfied that justice has not been done, no matter how many new trials may be considered necessary. See *Stein v. N. Y. Life Ins. Co.,* supra, page 231. The final trier of fact, however, is the jury, and, except as indicated, the court has no power to substitute its opinion in this respect for that of the jurors. It should be noted that we are not now concerned with a case in which the suit is in equity, as upon a bill to cancel the policy because of fraud, where the chancellor is the trier of fact, and a jury is not required: *Equitable*

---

[21] *Moncur v. Western Life Ind. Co.,* 269 Pa. 213, 217; *Koppleman v. Com. Cas. Ins. Co.,* 302 Pa. 106, 117; *Kzyszton v. John Hancock Mut. Life Ins. Co.,* 320 Pa. 65; *Smith v. Penn Twp. Mut. Fire Assn.,* 323 Pa. 93.

[22] "It is true, as a general rule, a party cannot be permitted to impeach the veracity of his own witness, yet he may disprove the facts to which his witness has testified": *Penna. R. R. Co. v. Fortney,* 90 Pa. 323, 328; *Appeal of Penna. Co. for Ins. on L. & G. Annuities,* 282 Pa. 69, 77; see *Henry, Pennsylvania Trial Evidence* (2d ed.), section 476.

*Life Assur. Soc. v. Klein,* 315 Pa. 156; *N. Y. Life Ins. Co. v. Brandwene,* 316 Pa. 218. Even where the aid of a jury is invoked in such a case to inform the chancellor's conscience, its function is merely advisory, and, under our equity rules, its findings are not binding upon him in the decision of the case: *N. Y. Life Ins. Co. v. W. Bodek Corp.,* 320 Pa. 347.

These principles may be summarized as follows: (1) Where the statements made by insured in the application are warranted by him to be true, or where the policy expressly provides for its avoidance by the falsity of such statements, the insurer may avoid the policy by showing the falsity of statements material to the risk, irrespective of insured's knowledge of their falsity or of his good faith in making them. (2) Where the statements are made representations, the insurer, to avoid the policy, must show they were false and insured knew they were false or otherwise acted in bad faith in making them. (3) If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer. (4) But whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral, or whenever the insurer's defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury, subject to the trial court's power to award a new trial as often as in its sound discretion it may think the interests of justice require. (5) When the suit is in equity, the chancellor is the sole trier of fact, and submission to a jury is not required except where he deems it advisable.

We have repeatedly affirmed these propositions with regard to the jury's function, and we have no intention of departing from them now. Indeed we could not do

otherwise, under our present system of law and of the determination of legal controversies, than hold that the credibility of witnesses and the resolution of disputed questions of fact are within the exclusive province of the jury. The problem of proof in insurance cases is not different from what it is in other cases. Where facts are established by uncontroverted evidence, and where the credibility of witnesses is not necessarily involved, the jury has no function, and the case may be decided without its assistance. But so long as the jury system exists,[23] if that branch of the court is to have any purpose, it must be regarded as the trier of disputed fact and of the trustworthiness of testimony. It may be that such a system does not always produce in some types of cases as even and impartial an administration of justice as may be desirable, or as might perhaps be achieved by courts sitting without juries. If such is the case, however, the remedy lies not with the courts themselves but with the legislature and the people. Our duty is to enforce the fundamental law, and the will of the legislature enacted in accordance therewith, as they are given to us.

An application of the above principles to the present case makes it clear that the court below acted properly in submitting the case to the jury. With the exception of the statement in plaintiff's reply that "one of the vertebræ would sometime get out of its rigid position" and be restored by osteopathic treatment, and certain statements in the proofs of death, the defense rested upon the

---

[23] In *Hostetler v. Kniseley*, 322 Pa. 248, it was said by Mr. Chief Justice KEPHART: "Discussions for and against the abolition of trial by jury have been waged since the beginning of this century, and defects have been shown to inhere in the system. So far no plan has been developed to take its place that will meet public approval, and so long as the Constitution provides for a jury as the fact finding medium, our efforts must be directed to keep this part of our judicial system above reproach. The jury's efficiency and integrity must be maintained on the highest plane if we are to prevent its forced abandonment and the embarking upon an uncharted course of experimentation with other untried methods."

testimony of defendant's witnesses. We are not satisfied that these written statements suffice to show the required bad faith on insured's part in the making of the application. At most they indicated that insured had consulted an osteopath at least once, in February, 1932, for dislocation of a cervical vertebra, that the first dislocation occurred five years before his death, that insured had consulted or employed, for purposes not mentioned, three physicians within three years prior to his death, two of whom were osteopaths, and that his death had resulted from a dislocation of the third cervical vertebra, which occurred while he was swimming. Nothing in this documentary evidence shows that Evans thought or had any reason to think the dislocations he suffered before his application for insurance were more than slight and temporary indispositions,[24] too trivial to be reported in the application.

Furthermore, it appeared from the testimony that, while a dislocation would sometimes result in temporary paralysis and would require insured to remain in bed, nevertheless the attacks "usually cleared up within twelve to twenty-four hours," and left him in an apparently normal condition. Only two doctors, both of whom were osteopaths and were called by defendant, testified to having treated insured for dislocations prior to the allegedly fatal one. The third doctor, who attended him during his last illness, testified to previous treatments

---

[24] "Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health," and therefore need not be reported: *Barnes v. Mut. Life Assn.,* 191 Pa. 618, 623; *Baer v. State Life Ins. Co.,* 256 Pa. 177, 182-183; *Livingood v. N. Y. Life Ins. Co.,* 287 Pa. 128, 132; *Baldi v. Metro. Ins. Co.,* 18 Pa. Superior Ct. 599, 610; *Clemens v. Metro. Life Ins. Co.,* 20 Pa. Superior Ct. 567, 572; *Czizik v. Verhovay Sick Ben. Assn.,* 60 Pa. Superior Ct. 466, 474; *McDonald v. Liberty Ben. Assn.,* 80 Pa. Superior Ct. 32, 35; see *Couch on Insurance,* section 885a; *Cooley's Briefs on Insurance,* chapter XII, section 17(K).

for bercitis, which was reported in the application, and for a bronchial inflammation, and further stated that his condition at that time (three months before the issuance of the policy) was otherwise "perfectly normal." The court below aptly said: "Nowhere is it shown that Edward W. Evans knew, or was told by any of the doctors who attended him, that his affliction was a serious one. Indeed the testimony shows that his neck treatments were few and when that condition was rectified he had prompt recovery and immediately thereafter engaged in his work. He may have labored under the impression that his condition was muscular for it was described by one of the osteopaths as a contracted muscle condition. There is also no direct testimony that the dislocated vertebra was the cause of his death; the nearest proof of that fact is the testimony of Dr. James who stated: 'I think that is the way it happened, we have no proof in this case because there was no autopsy.' Mere mistakes, inadvertently made, even though of material matters, or the failure to furnish all details asked for, where it appears there is no intention of concealing the truth, does not work a forfeiture, and a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown."

Clearly the question of good faith was, under the evidence thus presented, for the jury. Since the case has twice been submitted to a jury, each time with the same result, and since no prejudicial error in the conduct of the trial below or abuse of discretion in the refusal of a new trial has been shown, the entry of judgment on the jury's verdict must be held to have been proper.

Judgment affirmed.

Mr. Justice SCHAFFER took no part in the decision of this case.