Freeman et al., to use, *v.* Miners Savings Bank, Pittston, Appellant.

Argued March 7, 1941.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT,
JJ.

*John T. Mulhall,* with him *Martin J. Mulhall,* for appellant.

*Louis Shaffer,* with him *Mose H. Salsburg* and *Abram Salsburg,* for appellee.

OPINION BY BALDRIGE, J., April 18, 1941:

In an action of assumpsit binding instructions were given by the learned court below to the jury to render a verdict for the plaintiff in the sum of $2250. The case comes to us on an appeal by the defendant from the refusal of its motion for a new trial.

The Miners Savings Bank of Pittston owned a fac-

tory building located in West Pittston which was under lease to one John Ferrari, a manufacturer of men's clothing. On August 16, 1932, Freeman Brothers, under a duly recorded conditional sales contract, sold to Gladstone Brothers of New York certain textile machinery, which was placed in the building leased by Ferrari, whose entire output was taken by Gladstone Brothers. As landlord, the bank executed on the back of the conditional sales contract a release and agreement not to levy upon the leased chattels "for rent due it by the buyer thereof for the occupation of said premises."

The present suit brought by Weinstock, assignee of Freeman Brothers, although on its face is termed an action of assumpsit, in substance it is one of trover for an alleged conversion of the leased machinery by the defendant bank. The plaintiff in his statement of claim, after alleging that he was prevented from removing the machinery from the factory by agents of the bank after he had made a written request so to do, to the president of the bank, which was refused, averred: "10. That notwithstanding the above mentioned several demands on the part of the plaintiff and his attorney, ...... the said defendant *converted said articles to its own use* and disposed of the same against the wishes and demands of the said plaintiff." (Italics supplied).

Defendant filed an affidavit of defense in which it admitted the placing of the leased goods in its factory, the release of its right as landlord to levy on the same, and receipt of plaintiff's written demands, but denied it prevented removal of the machinery as it was "neither in its possession nor under its control."

The controversy before us is: Did the facts adduced require their submission to the jury?

At the trial, by means of admissions in the pleadings, plaintiff showed the sale of the machinery to Gladstone Brothers, the placing of it in defendant's factory building, the landlord's release of its right, and the assignment of the vendor's rights to him.

Benjamin Freeman, called by plaintiff, testified that about September 12, 1932, on behalf of Weinstock, his assignee, he came to Pittston and with an employee named Pacewitz attempted to remove the machinery, but was prevented from doing so by a man representing himself as an employee of the defendant bank. He then went to see Mr. Foster, president of the defendant bank (deceased at the time of trial), who, according to Freeman, orally refused to permit him to remove any of the machinery from the factory until Ferrari, who had become financially involved and had left town, returned or was produced by the witness. Thereafter, on September 27, 1932 and January 6, 1933, plaintiff's attorney by letters made written demands upon the bank, through its president Foster, and John R. Reap, Esq., for permission to remove, and also for a return of the leased machinery. Admittedly, the bank received these written demands but made no reply thereto.

Samuel King, called by plaintiff, testified that, acting for Joe Krisiloff, Inc. of New York City, he came to Pittston about March 28, 1933, to buy the clothing machinery in this factory and was referred by the Chamber of Commerce to the bank as the owner of the machinery. King stated that after some negotiations with the bank's president Mr. Foster, Krisiloff, Inc. bought all the machinery in the factory, including plaintiff's from the bank for $3200. According to King, the bill of sale, of which he was unable to produce either an original or a copy, was prepared by Mr. Reap.

Defendant offered to prove by William T. Jones, a justice of the peace, and James J. Moffatt, manager of the People's Light Company of Pittston, a creditor, that at the instance of Ferrari's various creditors other than the defendant bank, a fraudulent debtor's attachment was issued and the machinery in the building, including plaintiff's, was sold to Moffatt as trustee for the attaching creditors at a price of $657.29, and that he in turn sold the same machinery on March 29, 1933

to Joe Krisiloff, Inc. The exclusion of this testimony and refusal of these offers of proof by the trial court are the subject of appellant's fourth and fifth assignments of error.

Defendant called Mr. Reap, who testified that Krisiloff, Silas McHenry, secretary of the Chamber of Commerce, and James Moffatt, then president of that body, called at his office and requested him to prepare a bill of sale, as McHenry and Moffatt were about to sell the machinery in a West Pittston mill or factory. He authenticated carbon copies of two bills of sale, both dated ——— day of March 1933, that he prepared. One, executed by Silas McHenry, acting as trustee, provided for the sale to Joe Krisiloff, Inc. of a lot of machinery (not listed in the bill of sale before us) that was in defendant's mill, for the consideration of $2,442.71. It set forth that possibly "some of the merchandise is not now present in said mill and said machines and merchandise is purchased with this understanding." The other, executed by Moffatt as trustee for attaching creditors, conveyed to Joe Krisiloff, Inc. for the sum of $657.29 certain machinery in the West Pittston mill, which came into his possession under a constable's sale.

It will be observed that the most important part of the evidence relied upon by the plaintiff, as showing an alleged conversion of his machinery by the bank, was oral. The credibility of these witnesses upon whom he depended for a recovery was for the jury: *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236, 163 A. 523; *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 186 A. 133. See, also, *Mocan v. Nejak, Appellant*, 126 Pa. Superior Ct. 149, 153, 190 A. 208. The court, therefore, fell into error in giving binding instructions for the plaintiff.

Plaintiff's evidence regarding an alleged conversion was contradicted in essential particulars by defendant's witnesses, especially as regarding the sale of plain-

tiff's machinery to Joe Krisiloff, Inc. This case, therefore, is even stronger than *Nanty-Glo Boro v. American Surety Co.*, supra, where plaintiff's oral proof was uncontradicted.

Furthermore, the offers of appellant to show that creditors of Ferrari, lessee of the factory, issued a fraudulent debtor's attachment, levied on plaintiff's machinery, bought it in at the sale and sold it to Joe Krisiloff, Inc., were clearly relevant and should not have been excluded. Such evidence, if believed, tended directly to show defendant did not exercise control or dominion over plaintiff's machinery and hence established a defense to plaintiff's action based on an alleged conversion.

The trial judge took the erroneous view that as both sides presented points for binding instructions, and further that as defendant's attorney failed to object to that portion of the court's charge wherein it stated, "As the court views the evidence in this case, and as counsel on both sides concede, there is no question of fact to submit to the jury," the defendant is barred from asserting that there were factual issues for the jury's consideration. Requests for binding instructions do not preclude either party from subsequently contending that the case was for a jury. Although a different rule prevails in the Federal Courts and in some other jurisdictions, in this state it has not been adopted. As stated by former Chief Justice MOSCHZISKER in his well-known work "Trial By Jury" (2d. Ed. 1930), Section 333, page 234: "In [the Federal Courts] it is held that a request by each party for binding instructions is equivalent to a submission of the case to the court, and waives a jury trial; this is not our practice, however, nor does it seem reasonable. With us, both sides may ask for binding instructions, and, if the court thinks the evidence is such as the jury should pass on, it will submit the case, despite the mutual requests for binding instructions; but, under such circumstances, if the parties expressly agree that there is no question for

the jury, the court may dispose of the case." See, also, 6 Standard Pennsylvania Practice, pp. 72, 73, §88.

Nowhere in the present record is there any indication that counsel for defendant expressly agreed there were no issues of fact for the jury to pass upon. The case was sharply contested throughout; defendant cross-examined plaintiff's principal witnesses at length and introduced evidence to contradict and impeach that presented by the plaintiff. Defendant asked for and was granted an exception to the court's affirmance of plaintiff's point for binding instructions. In refusing defendant's point for binding instructions the court stated: "If we should happen to be wrong in this ruling, members of the jury, the error can be corrected afterward in the argument before the court, before all the judges of this court, upon the point of Mr. Mulhull, counsel for the defendant, for binding instruction in his favor."

We are mindful of the rule that ordinarily it is the duty of counsel, if the judge makes a misstatement in his charge, to call attention thereto: *Medis v. Bentley,* 216 Pa. 324, 65 A. 758; *Gallup v. Pittsburgh Railways Company,* 295 Pa. 203, 145 A. 73. In this case, however, the judge was undoubtedly fully aware of defendant's contention as the record shows that it insisted throughout the trial that the issues of fact were for a jury's determination.

We are not prepared to say that it was incumbent upon the defendant to further press its position by attempting to correct the effect given by the court to its request for binding instructions. In view of all the attending circumstances such a failure should not be penalized by depriving the defendant of having submitted to the jury the factual issues which it had raised.

Appellant's third, fourth and fifth assignments are sustained.

The judgment of the court below is reversed and a new trial ordered.