Opinion by
Flood, J.,
The plaintiff insurance company, seeking rescission of an insurance policy issued on the life of Michael M. Franchock, alleged that it issued the policy in reliance upon the statements and representations made to the plaintiff’s examining physician by Franchock fraudulently and in bad faith. The chancellor found that Franchock was not aware of the conditions which he did not disclose in those answers and that there was ho bad faith. He further found that the plaintiff issued the policy in reliance exclusively upon its own investigation, not upon the answers noted in the application. The chancellor thereupon refused the relief sought by the plaintiff and entered judgment for the defendant beneficiaries on their counterclaim for the amount of the policy. The plaintiff has appealed from the decree of the court en banc making absolute the chancellor’s decree nisi.
As the appellant points out, the guide-lines in this type of case consist of five governing principles laid down in Evans v. Penn Mutual Life Insurance Co., 322 Pa. 547, 186 A. 133 (1936). We need not repeat these five principles which are set forth at length' in the *440 Evans case on pages 560-61, 141-42. Applying them here, we find that since the insured’s answers complained of were admittedly representations and not warranties, principle (2) requires the insurer, if he wishes to rescind, to show that these answers were knowingly false or made in bad faith. , Since all disputed facts were found in favor of the defendant by the chancellor and these findings were confirmed by the court en banc, the decree must be affirmed under principles (4) and (5) of the Evans case, unless, as the plaintiff contends, principle (3) requires otherwise.
Principle (3) reads as follows: “If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff’s [i.e., the beneficiary’s] own witnesses, a verdict may be directed for the insurer.”
The trouble with the plaintiff’s argument is that it cannot establish its position either from the testimony of the beneficiary’s witnesses or from the documentary evidence. The insurance company’s case depends upon the testimony of its own witnesses. In such case, under principles (4) and (5) of the Evans decision the case must be submitted to the jury or the chancellor, and in such case the findings of the chancellor, concurred in by the court en banc, are conclusive if supported by the evidence and we may neither overrule them nor substitute our judgment for that of the trial judge. Claughton v. Bear Stearns & Co., 397 Pa. 480, 488, 156 A. 2d 314, 318 (1959).
The testimony bearing upon the insured’s knowledge of the falsity of the answers comes entirely from witnesses called by the plaintiff. The only documentary evidence in the record before us which could have any tendency to support the plaintiffs case is the ap *441 plication. The court found that the answers were written in the application by Dr. Lechman, the plaintiff’s examining physician, and the application, so filled in, was signed by the insured. The court further found that the insured was not highly educated, having gone only to the third grade. A factual question is immediately raised as to whether Dr. Lechman properly put the questions to the plaintiff, understood and properly recorded his answers, and whether the insured relied upon the doctor’s properly filling in the application before he signed it. The following quotation from Dr. Lechman’s cross-examination illustrates that the insured’s fraudulent conduct or bad faith cannot be determined as a matter of law from this application alone, and that it cannot fall into the category of “competent and uncontradicted documentary evidence” which would justify a directed verdict for the insurer under principle (3) of the Evans decision.
“Q. How many times did you read each question to Michael Franchock do you recall, Doctor?
“A. Well, that is difficult. I am sure that I read them once. Occasionally there is a question that has to be re-read, sometimes asked to be re-read but I don’t recall that he did.
“Q. Read the question once approximately, answered them and you recorded his answer and went on to next question?
“A. That’s correct.
“Q. Now after you had read . . . question 18, 'Have you ever been under observation or treatment in any hospital, asylum or sanitarium?’, and secured the answer 'yes’, 'yes, he was’, and by way of explanation you had transcribed your words, 'gastric ulcer subtotal gastrectomy’, after that then did you go on to the next question ?
“A. I presume I did. I felt that was answered.
“Q. You didn’t really ask him whether hospitalized [sic] on subsequent occasions then?
*442 “A. No, that question I think was fairly definite.”
In addition to the application the appellant relies upon certain hospital records which, however, are not properly before us because they do not appear in the printed record, nor were,, they otherwise brought before us by petition and order under our rules.
The plaintiff relied upon these records to show two hospitalizations for serious diseases within little more than a year before the application was signed, and cites the statements in Evans v. Penn Mutual Life Insurance Company, supra, and certain other cases such as Walsh v. John Hancock Mutual Life Insurance Company, 164 Pa. Superior Ct. 184, 63 A. 2d 472 (1949), to the effect that “the circumstances preceding and attending the making of the. statements may be such that the insured must be said to have been aware of their falsity at-the time, or that an inference Of fraud is otherwise irresistible,' as for instance where an unreported illness or disability of insured was so serious and so recent that he could not have forgotten it.”
The appellant contends that the concealment of these relatively recent hospitalizations • for serious illness raise an irresistible inference of fraud. However, the above-quoted excerpt from Dr. Leeliman’s cross-examination as to how the application was filled in by him shows that it raises' no such irresistible inference of fraud or bad faith in this case, but is merely evidence to be considered upon that question by the trier of fact who found to the contrary. There is nothing in the documents to overthrow the chancellor’s findings.
There were many things in the testimony to support the chancellor’s rejection of any inference of fraud or bad faith. The insured in his application disclosed the name of Dr. Blair, the doctor who treated him for the heart condition. He Similarly disclosed the name of the hospital where he was confined and signed an an *443 thorization to the plaintiff to examine or obtain copies of the hospital records. While Dr. Blair and Dr. Oliver testified that they told him that his heart was the cause of his severe discomfort, Dr. Blair testified that he did not know whether Franchock believed it. Franchock continued his laborious work for a year thereafter without any indication that he was not inquisitive about this condition and was never convinced of what Dr. Blair told him. He said to Dr. Blair: “I will be all right. Just take care of the shortness of breath. I want to go back to work.” Dr. Blair agreed that the insured made a remarkable recovery after his first hospitalization for heart trouble in 1956 and while he treated him a number of times for virus infections and colds in 1957, it was not clear that he ever treated him In 1957 prior to December for his heart condition and did not see him at all after May, 1957, until his final hospitalization on December 19, 1957.
The heart condition was not discovered by Dr. Lech-man, the examining physician for the plaintiff, who gave him a clean bill of health after his physical examination. Despite Dr. Blair’s testimony as to the insured’s confinement with a damaged heart in October, 1956, under his care, this doctor made a report to the plaintiff under date of December 9, 1957, in connection with the insured’s application for insurance, in which he reported only a 1953 hospitalization for the gastrectomy from which Franchock had fully recovered. This report mentioned nothing about a heart condition. The report made to the plaintiff by Retail Credit Corporation in connection with the application, evidently following an investigation at his place of work, indicates that at that plant, where the informants had known him two to three years, they had learned of no illness and that he appeared in good health. There is no indication that he missed any time from work except during his actual confinements to the hospital.
*444 As the chancellor pointed out, the insured applied for only a modest amount of insurance and did so only because it was necessary to procure a mortgage. There does not appear to be a planned attempt to cheat the insurance company by a fraudulent application for a relatively large policy by a man who believed that he had only a short time to live. The insured was only forty-seven years of age and was a steady, physical worker who apparently took his illnesses lightly.
Under these circumstances, we cannot say that the chancellor improperly concluded that the plaintiff had not sustained its burden of proving the insured’s fraud or bad faith. There is no documentary evidence from which fraud or bad faith affirmatively appears. Any such finding would have to be based upon the testimony of the insurer’s witnesses. Under the evidence, the chancellor’s refusal to find fraud or bad faith, concurred in by the court en banc, should not be set aside by us. Claughton v. Bear Stearns & Co., supra.
Decree affirmed.
Woodside and Watkins, JJ., dissent.