**Frank MAROSKI, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BETHLEHEM STEEL CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 18, 1998.

Decided Feb. 25, 1999.

As Amended March 3, 1999.

Martha J. Hampton, Philadelphia, for petitioner.

Jonathan D. Weiss, Philadelphia, for respondent.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Frank Maroski (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed in part, vacated in part and affirmed in part a workers' compensation judge's (WCJ) decision denying Bethlehem Steel Corporation's (Employer) petitions for termination, suspension and review of medicals. We affirm.

On October 30, 1992, Claimant sustained a work-related crush injury to his left hand while working for Employer as a crane operator. He received workers' compensation benefits pursuant to a notice of compensation payable. In August of 1992, prior to the work injury, Claimant had formally indicated his intention to accept an early retirement package offered by Employer, entitling Claimant to a $400 bonus per month in addition to his regular pension, until Claimant reached his regular retirement age of 62. Although Claimant was aware that he could revoke his election to retire at anytime up until November 30, 1992, he did not choose to do so. On November 30, 1992, after twenty-eight years of employment with Employer, Claimant retired. He was 52 years old.

On April 2, 1993, Employer filed a petition for termination or suspension, alleging that Claimant had been released to return to work without restrictions and that Claimant had voluntarily retired. Although Employer withdrew the termination portion of the petition on September 2, 1993, on October 15, 1993, Employer again petitioned for termination and additionally for review of medicals, alleging that the carpal tunnel surgery Claimant planned to undergo on October 23, 1993, was not reasonable, necessary or related to Claimant's work injury. The suspension portion of the original petition remained pending and the WCJ consolidated the various petitions.

While the case was proceeding before the WCJ, Employer also filed a petition for utilization review to determine whether the carpal tunnel surgery was reasonable and necessary. The utilization review organization's (URO) decision provided that the surgery was not reasonable and necessary treatment for the left hand crush injury, based on a determination that Claimant's bilateral carpal tunnel syndrome was preexisting and not related to the work injury. Claimant did not appeal the URO decision.

At hearings before the WCJ, Employer presented the testimony of three employees and that of Stephen L. Cash, M.D., who examined Claimant on two occasions for this litigation. Dr. Cash opined that Claimant was completely recovered from his work-related injury and did not suffer from carpal tunnel syndrome. Claimant testified on his own behalf and presented the testimony of John M. Bednar, M.D., who treated Claimant and performed the carpal tunnel surgery. Dr. Bednar opined that Claimant's work injury caused the carpal tunnel syndrome on the left side and noted Claimant's complaints of pain, loss of strength and findings from EMG studies that supported Claimant's continuing disability. The WCJ found Dr. Bednar credible and rejected Dr. Cash's opinion in that Dr. Cash offered no opinion to explain Claimant's pain, loss of strength and reduced nerve conduction velocities.

In addition to the medical findings and the other findings summarized above, the WCJ formulated the following pertinent findings of fact:

6. By accepting early retirement from Bethlehem Steel Corporation on November 30, 1992 the claimant did not elect or express, in any way, his intention to retire from all employment.

7. As a result of the claimant's acceptance of early retirement, defendant never made an offer of employment to the claimant after his work related injury.

8. The defendant did offer medical testimony and factual testimony to prove that

work would have been available to the claimant within his capabilities, had he not elected early retirement. Although this testimony is generally credible, it will not be further discussed because *the defendant did not make work available to the claimant.* [Emphasis in original.]

. . . .

11. The claimant's carpal tunnel syndrome in his left hand is related to the work injury and surgery for that carpal tunnel syndrome was reasonable, necessary and related to the work injury.

12. The claimant has not yet fully recovered from the work injury.

13. The claimant's testimony concerning his pain and disability is credible and persuasive.

(WCJ's decision, pp. 4–5.) The WCJ concluded that Employer failed to prove: (1) that Claimant had completely recovered from the work-related injury, (2) that work was available to Claimant within his limitations, (3) that Claimant had retired from the work force, and (4) that Claimant's carpal tunnel surgery was unrelated to the work injury. Therefore, the WCJ denied Employer's petitions and ordered the continuing payment to Claimant of benefits and medical expenses including those relating to the carpal tunnel surgery.

Employer appealed to the Board, arguing that the WCJ erred in denying the suspension petition because Claimant had voluntarily removed himself from the work force by electing to retire, that the WCJ had no authority to disregard the URO's decision and in opposition thereto conclude that the treatment for Claimant's carpal tunnel syndrome was reasonable and necessary, and that the WCJ erred in not granting its termination petition based upon Claimant's full recovery from the work-related injury.

Relying on *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995), the Board explained that Claimant, not Employer, had the burden to prove that he was either seeking

employment after his retirement or that he was forced into retirement because of his work-related injury. The Board concluded that the WCJ had erred as a matter law because Claimant had failed to satisfy this burden, i.e., Claimant elected to retire and sought no employment since that time.

With regard to Employer's argument concerning the URO decision, the Board recognized that although the URO is limited to determining the reasonableness or necessity of medical treatment, its decision impermissibly rested on a determination of a lack of a causal relationship. The Board, however, disagreed with the WCJ that the URO decision was a nullity. Rather, relying on *Florence Mining Co. v. Workers' Compensation Appeal Board (McGinnis),* 691 A.2d 984 (Pa. Cmwlth.1997), the Board held that the ultimate decision by the URO as to reasonableness and necessity was a final, unappealed order and that the underlying basis for the decision should not be explored because no proper appeal was taken. The Board concluded that while the issue of causation was before the WCJ, the issue concerning reasonableness and necessity of treatment was not. Therefore, the Board held that the WCJ could properly hold that the carpal tunnel syndrome was related to the work injury, but could not conclude that the surgery was reasonable and necessary and, therefore, reimbursable.

The Board also discussed the WCJ's denial of Employer's termination petition, concluding that based on the WCJ's credibility determination regarding the testimony of Claimant's medical witness, Employer had failed to persuade the WCJ that Claimant had fully recovered from his work-related injury.

To summarize, the Board reversed the WCJ's denial of Employer's suspension petition, vacated the determination that Claimant's surgery was reasonable and necessary, and affirmed the denial of the termination petition. Accordingly, Claimant's benefits were suspended effective November 30, 1992.[1]

---

1. As a result of its decision concerning the effect    of the URO determination, the Board concluded

Claimant now appeals to this Court,[2] arguing that any inquiry into whether a claimant has withdrawn from the work force is a question of fact and not a question of law based on the *Henderson* criteria. Moreover, Claimant argues that the Board ignored the WCJ's findings concerning Claimant's retirement intentions and inability to work that form the basis for a conclusion that Claimant did not voluntarily leave the work force. Additionally, Claimant argues that the Board erred in vacating the WCJ's decision that the URO's determination was not binding because it rested on an impermissible basis.

■ Initially, we note that when a petition for termination has been filed, the employer has the burden to prove that the claimant's disability has ceased entirely or is no longer the result of a work-related injury. *McFaddin v. Workmen's Compensation Appeal Board (Monongahela Valley Hospital)*, 153 Pa.Cmwlth. 252, 620 A.2d 709 (1993). However, the Supreme Court's *Henderson* decision modified the burden of proof in cases wherein the claimant has voluntarily retired.

The *Henderson* court relied on its earlier decision in *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994), an occupational disease case, that held that a claimant who offered "no evidence that he was forced into compulsory retirement due to his disabling occupational disease, but rather, voluntarily retired from the work force . . . is not entitled to benefits under the Workmen's

Compensation Act. Benefits under the Act will only be permitted where the disabling, work related injury or disease, results in a loss of earning power." [3] *Id.* at 38, 640 A.2d at 1270.

The *Henderson* court then stated:

It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive. *For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury.*

*Id.* at 79, 669 A.2d at 913 (emphasis added).

Claimant quoted the above paragraph from the *Henderson* opinion, arguing that the Board misinterpreted the holding. Rather, Claimant contends that the two conditions set forth in *Henderson* are but two factors that should be considered when determining whether a claimant should receive benefits following retirement. In an attempt to persuade this Court to expand the *Henderson* test, Claimant cites three Commonwealth Court opinions,[4] emphasizing the

that medical treatment for physical therapy and medications not directly part of the surgical procedure or the postoperative period was payable on Claimant's behalf.

**2.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

**3.** Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

**4.** The cases cited by Claimant are: *Armstrong World Industries v. Workers' Compensation Appeal Board (Evans)*, 703 A.2d 90 (Pa.Cmwlth. 1997); *Figured v. Workers' Compensation Appeal Board (USAir, Inc.)*, 702 A.2d 3 (Pa.Cmwlth. 1997); and *Bryn Mawr Hospital v. Workers' Compensation Appeal Board (O'Connor)*, 701 A.2d 805 (Pa.Cmwlth.1997). In *Armstrong*, the claimant credibly testified that he intended to continue to work and had in fact sought work following his retirement. It was on this basis that benefits were continued. In *Figured*, benefits were suspended because the WCJ did not believe the claimant's testimony that he had retired because of his back problems. In *Bryn Mawr*, the claimant elected to retire before she suffered a work-related injury. The injury prevented the claimant from taking the part-time babysitting job she was to begin following retirement. The claimant's testimony in this regard was believed by the WCJ and supported the finding that the claimant had not left the work force. The court held that the claimant was going from one job to another;

age of the claimants, noting that all were at least 60 years of age, while Claimant here was only 52. Claimant also emphasized Employer's intent to downsize the work force. In summary, Claimant believes this Court should examine all the circumstances, i.e., Claimant's age, his intentions as to future employment, the prospects for continued employment with Employer and Claimant's continuing medical treatment for his work-related injury.

In response, Employer contends that *Henderson, Republic Steel,* and *Figured* all support the Board's decision here. The claimants in those cases took voluntary retirement but failed to prove that their work injuries precluded them from continuing to be a part of the work force. Employer also relies on *City of Philadelphia v. Workmen's Compensation Appeal Board (Defruscio)*, 695 A.2d 910 (Pa.Cmwlth.1997), wherein the court held that because the 54 year old claimant had voluntarily retired, but had failed to establish that his injury compelled his retirement, he was ineligible for disability benefits. Additionally, Employer distinguishes *Armstrong* and *Bryn Mawr.* In those cases, the claimants both provided proof that they were either actively seeking employment or had obtained a job prior to retiring.

Our review of the cases cited by the parties makes clear that the *Henderson* criteria are mixed questions of fact and law and that a final decision should be based on the particular facts as found by the WCJ in each case. Therefore, we must examine the WCJ's findings and the evidence upon which those findings rely to determine whether Claimant has proven that he sought employment after retirement or whether he was forced to retire because of his work related injury. Claimant's age and Employer's downsizing are just two of many factors that a WCJ could consider but are not dispositive.

The two findings of fact (FOF) concerning these criteria are: FOF No. 6, which indicates that Claimant did not "elect or express,

in any way, his intention to retire from all employment" and FOF No. 13, which states that "claimant's testimony concerning his pain and disability is credible and persuasive." Claimant's testimony that forms the basis for these findings reflects an intent on Claimant's part to seek employment at some time in the future, but that he had not done so because of his continuing problems with his hand. Nowhere in his testimony does Claimant state that he did not voluntarily retire but, more important, Claimant did not present evidence that he sought employment after retiring[5] or that he was forced to retire due to his injury. Rather, he attempts to persuade the WCJ that he will look for work when his hand is better. However, the WCJ made no such determinations. Furthermore, we note that Claimant's own physician testified that Claimant could perform work with some restrictions limited to his left hand. We conclude that under *Henderson* Claimant's evidence is insufficient and too speculative to support a finding that Claimant has not left the work force or that he left his job because of his injury. The WCJ's FOF No. 6 only recognizes a lack of intent to retire, but does not state that Claimant has sought employment.

■ Accordingly, we conclude that Claimant has not carried the burden of proof set forth in *Henderson.* Claimant failed to prove that after retirement he was seeking employment or was forced to retire because of his work injury. Moreover, the Board did not reverse or in any way disregard the WCJ's findings. It properly exercised it power to review conclusions of law. *See Continental Forest Industries v. Workmen's Compensation Appeal Board (Hummel)*, 149 Pa.Cmwlth. 523, 613 A.2d 629 (1992). Therefore, the Board's reversal of the WCJ's denial of the suspension petition is affirmed.

Claimant next argues that the Board erred in vacating the WCJ's determination concerning the URO decision. Claimant contends that the Board's reasoning in regard to

she was not leaving the work force and, therefore, was entitled to a continuation of benefits.

**5.** Claimant did testify that at the time he elected to take the early retirement pension, he contem-

plated looking for a job that did not entail swing shift, holiday work and weekend work. The WCJ did not credit this testimony; nor did the WCJ make any findings concerning this evidence.

Claimant's failure to appeal the URO decision is in error because the URO's decision was impermissibly based on a conclusion that Claimant's carpal tunnel syndrome was not work-related. Claimant argues that the URO decision is void *ab initio* and should not be allowed to stand regardless of the doctrine of exhaustion of remedies.

Claimant relies on *Terminato v. Pennsylvania Insurance Co.*, 538 Pa. 60, 645 A.2d 1287 (1994), a case that involved a requirement to request reconsideration of a peer review determination prior to filing suit to recover medical benefits under an insurance policy under the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7. Claimant contends that *Terminato* stands for the proposition that the exhaustion of remedies doctrine has no application to peer review procedures and that, therefore, Claimant's failure to appeal the URO decision should not prevent the WCJ from disregarding it. We disagree.

Although the *Terminato* court stated that the exhaustion doctrine had no application to peer review, we believe Claimant has misinterpreted the holding as it applies to workers' compensation cases. We note that *Terminato* involved a pre-litigation, non-binding review provided for under the MVFRL. That is not the situation here. The legislature in enacting the 1993 amendments to the Act commonly known as "Act 44," [6] provided procedures to challenge the reasonableness and necessity of treatment by submitting a request for review by a URO. This procedure is an integral part of the administrative agency's scheme to review medical treatment and is not a procedure like the one contemplated under the MVFRL.

■ "Like in other situations where failure to take an intermediate administrative appeal precludes further review …, the effect an unappealed determination of the URO has, then, is that all parties are bound by it and the WCJ is without authority to alter that determination, unless a petition for review has been filed [from that determination]." *Florence Mining*, 691 A.2d at 987. The *Florence Mining* opinion further stated that:

> Because Claimant and Provider failed to pursue their administrative remedies by filing a petition for reconsideration from the initial UR determination, they are not able to challenge the effect of such determination before the WCJ in the underlying case. *Because no appeal was taken from the initial UR determination, any question as to whether that determination was correct, … was not before the WCJ, the Board, nor is it before this Court.* As an unappealed determination, it is final and binding as to whether the treatment rendered was reasonable or necessary.

*Id.* at 987–88 (emphasis added). *See also Warminster Fiberglass v. Workers' Compensation Appeal Board (Jorge)*, 708 A.2d 517, 521 (Pa.Cmwlth.1998) ("[W]hen any objecting party fails to timely appeal the URO determination to the WCJ, all parties are then bound by the unappealed URO determination and the WCJ has no authority to alter that determination."); *Cf. Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998) (URO's determination does not have preclusive effect on WCJ's determination whether the treatment was causally related to the work injury).

■ Claimant attempts to distinguish *Florence Mining*, arguing that in that case the URO in making its determination did not go beyond the scope of its authority, but that here the URO did just that. This distinction is one without a difference.[7] Regardless of the nature of the alleged error by the URO, Claimant was obliged to timely appeal. Having failed to take the proper action, Claimant, as well as the WCJ and Employer, are bound by the final decision of the URO. We conclude that the WCJ erred in changing the outcome of the URO decision as to the rea-

---

6. Section 306(f.1) of the Act, *as amended* by Section 8 of the Act of July 2, 1993, P.L. 190, 77 P.S. § 531.

7. The issue here is essentially one concerning causation; it does not implicate jurisdiction between the URO and the WCJ. Our determination rests on Claimant's failure to appeal from the URO's decision. Without an appeal that decision is final.

sonableness and necessity of the Claimant's medical treatment. Therefore, we affirm the Board's decision, vacating that portion of the WCJ's order.

For the reasons stated above, we affirm the order of the Board.

### ORDER

NOW, February 25, 1999, the order of the Workers' Compensation Appeal Board, at No. A95–2615, dated April 28, 1998, is affirmed.