The PENNSYLVANIA STATE UNI-VERSITY/ The PMA Insurance Group, Petitioners

v.

WORKERS' COMPENSATION APPEAL BOARD (HENSAL), Respondent.

Commonwealth Court of Pennsylvania.

Argued April 9, 2008.
Decided May 19, 2008.

Darryl R. Slimak, State College, for petitioners.

J. Scott Leckie, Washington, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The Pennsylvania State University and the PMA Insurance Group (collectively, Employer) appeal from an order of the Workers' Compensation Appeal Board (Board) affirming a decision by the Workers' Compensation Judge (WCJ) denying its petition to suspend the workers' compensation benefits of Robert Hensal (Claimant). Employer argues that it was entitled to a suspension of Claimant's benefits because he failed to engage in a good-faith job search by actively seeking employment and, instead, had voluntarily withdrawn himself from the entire workforce.

On February 21, 2002, Claimant sustained a work-related left shoulder sprain/strain and pursuant to a notice of compensation payable began receiving workers' compensation benefits at the rate of $336.34 based on an average weekly wage of $504.51. In January 2004, having not resumed work with Employer, Claimant applied for a disability pension. Employer subsequently filed a petition to modify his benefits claiming that work was available to Claimant within his work restrictions.[1] Following a hearing in which Employer demonstrated that work was generally available for Claimant, the WCJ granted Employer's petition on June 13, 2005, modifying Claimant's benefits to $193.89 based on an average weekly wage of $213.67 of the jobs available to him. After this determination, Claimant remained unemployed, and on March 30, 2006, Employer filed a petition to suspend his benefits claiming that by retiring, Claimant had voluntarily withdrawn from the workforce.

Before the WCJ, Employer offered the deposition testimony of Byron L. Maurer (Maurer), a vocational rehabilitation specialist, to establish that employment was available to Claimant within his work restrictions. Maurer testified that Claimant was able to drive, surfed the Internet and hunted, and that he had worked as a gas station attendant/mechanic, a hardware store assistant manager trainee and delivery person and an auto parts person in

1. At the time Employer file its modification petition on June 23, 2004, Claimant was restricted to lifting no more than 15 to 20 pounds with no sustained overhead lifting.

trucking. He identified several positions within Claimant's work restrictions, including a laundry worker, a parking lot attendant, an operator for Verizon and an assembler, and indicated that those jobs were vocationally appropriate for him based on his past experiences and skills. However, Maurer admitted that Claimant was not hired for any of the positions.

Employer also submitted the WCJ's June 13, 2005 decision modifying Claimant's benefits. In that decision, the WCJ found that no positions were available with Employer either because Claimant was ineligible for bargaining unit positions when he had not bid on any or that other positions demanded certain educational requirements and computer skills that Claimant did not possess. The WCJ also found that general work was available to Claimant within his work restrictions, such as a parking lot attendant or assembler,[2] and that Claimant could have been hired if he had been "motivated to seek employment." (WCJ's June 13, 2005 Decision at 3).

In opposition, Claimant testified that after sustaining his work injury, he applied for a disability pension in January 2004 in order to maintain health insurance, hospitalization, vision and other benefits provided by Employer. With regard to his employment status since his injury, Claimant stated that he was registered with Career Link, an organization that provided career services to job-seekers, and through his registry, he was able to go to the Career Link office or on its website to search for available jobs. He testified that he periodically checked the Career Link website for openings, as well as other job websites and newspaper ads, but had not found work through those efforts. He stated that he was interested in a position with Penelec, but no openings were available. Additionally, Claimant inquired about a position at the local driver's license center and was informed that he had to pass the civil service test to be eligible for that job.

On cross-examination, Claimant admitted that he did not have any documentation to confirm that he was searching for employment such as copies of the newspaper want-ads he viewed or job applications he had submitted. He testified that he last visited the Career Link office one week prior to the current hearing, and stated that he had not been to a Career Link office before that visit. Claimant indicated that he had inquired about the driver's licensing position two weeks prior to the immediate hearing, and although he was in the process of applying for a civil service test, he had not applied for the position itself. He also admitted that he had not contacted anyone associated with Employer about an available position since the last hearing on Employer's modification petition, and that he did not apply for assistance from the Office of Vocational Rehabilitation. In addition, Claimant acknowledged that he retired from his position with Employer on February 21, 2002, and had not worked in any capacity since that time.

Determining Claimant's testimony to be credible, the WCJ found that he established that he was not voluntarily removed from the workforce because he was seeking employment consistent with his pre-injury earning power and would return to work in a job which would pay his pre-injury wage. He concluded, however, that Employer established that Claimant's maximum earning capacity was $213.67,

2. The WCJ found that the position of laundry worker was outside of Claimant's work restrictions, and the operator job with Verizon required computer skills that he did not possess.

and Claimant's loss of earning beyond that sum arose from his work injury, which was Employer's responsibility "until Claimant's earning power exceed[ed] his pre-injury wage, or the evidence show[ed] the Claimant would not return to work even if he could do so with no loss of earning power." Based on this reasoning, the WCJ denied Employer's suspension petition.

Employer appealed to the Board, arguing that the WCJ erred in not granting a suspension of benefits after June 13, 2005, when it filed its suspension petition. Specifically, it argued that Claimant had not met his burden of showing that he had not withdrawn from the workforce because he had not shown a good-faith effort to seek employment by merely taking action to locate a job two weeks before the WCJ's hearing. It also argued that Claimant's benefits should have at least been suspended for the period from the filing of the petition to suspend until two weeks before the WCJ's hearing, because he had "temporarily" retired during that period. The Board affirmed, finding that Claimant's uncontradicted testimony that he sought employment at various positions established that he was not voluntarily removed from the entire workforce. The Board also rejected Employer's second argument concluding that no authority supported a determination that a claimant may be "temporarily" retired for a period of time.

■ On appeal, Employer contends that the Board erred in determining that Claimant had not voluntarily removed himself from the entire workforce given that he admitted that he had not sought work between June 13, 2005, until two weeks before the WCJ's hearing.[3] It argues that Claimant's efforts to find work did not establish that he engaged in a good-faith job search, because he did not seek employment at jobs within his work restrictions, and only began to actively seek work once Employer filed its suspension petition. Employer maintains that his benefits should be suspended as of June 13, 2005, or if he did seek work after the filing of its petition, at a minimum, the WCJ should have made a finding as to *when* he attempted to find work and made a determination on its suspension petition based on that date.

■ To establish a claimant's earning power, an employer must demonstrate that suitable employment was made available to a claimant. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). However, an employer is not required to offer suitable alternative employment when a claimant has left the workforce having no intention of working because the claimant would not accept it when proffered. Where, as here, a claimant accepts a pension, our Supreme Court, in *Southeastern Pennsylvania Transit Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995), held that the claimant is presumed to have left the workforce entitling an employer to a suspension of benefits unless he establishes that (1) he is seeking employment or (2) the work-related injury forced him to retire. Because Claimant does not contend that his work injury forced him to retire, the only question is whether Claimant sustained his burden of showing that he was actively seeking employment.

To show that he was actively seeking employment, Claimant had to show that he

3. Where the WCJ's findings reflect a deliberate disregard of competent evidence that logically could not have been avoided in reaching the decision, the findings represent a capricious disregard of competent evidence. *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197 (Pa.Cmwlth. 2006).

engaged in a good-faith job search. *Mason v. Workers' Compensation Appeal Board (Joy Mining Machinery and AIG Claim Services),* 944 A.2d 827 (Pa.Cmwlth. 2008). The duty of "good-faith" has been defined as "[h]onesty in fact in the conduct or transaction concerned." *Somers v. Somers,* 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992). To show "good-faith" then, a claimant has to show that he has honestly undertaken efforts where an employer knows that he is seeking employment.

In this case, based on the facts as found by the WCJ, Claimant failed to show that he was engaged in a good-faith effort to seek employment. Searching the Internet and newspaper ads for jobs, without more, does not constitute a job search; it constitutes "surfing" the web and reading the newspaper—it is window shopping. To show that he was engaged in a good-faith effort, a claimant has to show that he applied or sent applications for employment or other indicia that he was actively applying for employment. Because Claimant has not satisfied his burden under *Henderson* by showing that he was incapable of working at any job in the entire labor market or sought alternative employment within his work restrictions in good faith, Employer is entitled to a suspension of benefits.

Accordingly, the order of the Board is reversed.

***ORDER***

AND NOW, this *19th* day of *May,* 2008, the order of the Workers' Compensation Appeal Board, No. A06–2841, is reversed.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that, for a claimant to prove that he is making a good faith effort to **seek** employment after retiring on a disability pension solely to maintain his health insurance and benefits, (*see* WCJ's Findings of Fact, No. 12), the claimant must show that he or she "applied or sent applications for employment or other indicia that he [or she] was actively **applying** for employment." (Majority op. at 911) (emphasis added). Thus, the majority concludes that the credible testimony of Robert Hensal (Claimant) regarding his registration with Career Link, his efforts to acquire information about a civil service test and his searching for available jobs on various internet web sites is insufficient, as a matter of law, to prove that he is making a good faith effort to seek employment. I cannot agree.

Searching for a job involves multiple steps: (1) finding a suitable and available job; (2) applying for that job; (3) obtaining an interview for that job; and (4) being offered that job. The majority has decided that the process of finding a suitable and available job, the first step in obtaining employment, does **not** constitute a **good faith** effort to seek employment **as a matter of law.** It is true that looking for suitable and available jobs is a different activity than filling out job applications, but both are activities aimed at securing employment. Indeed, unless a claimant looks in good faith for suitable and available jobs, the claimant cannot perform the subsequent acts of applying for and obtaining a job.

Moreover, in *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 79, 669 A.2d 911, 913 (1995) (emphasis added), our supreme court stated that, in order for a claimant to establish an entitlement to benefits after voluntarily removing himself from the labor force by retiring, the claimant must show that "circumstances subsequently change[d] **in fact,**" i.e., that, **as a matter of fact,** he is seeking employment. In

other words, whether a claimant is exercising good faith in seeking employment is a question of fact, not law.[1] *See Evans v. Penn Mutual Life Insurance Company,* 322 Pa. 547, 186 A. 133 (1936) (stating that, ordinarily, good faith is a question of fact).

The fact finder in this case is the workers' compensation judge (WCJ), and the WCJ found credible Claimant's testimony that he is seeking employment and that he has not removed himself from the workforce. Because the question of good faith is for the fact finder and because the fact finder here believed Claimant, I would affirm.[2]

Judge SMITH–RIBNER joins in this dissent.

---

1. Thus, in *Maroski v. Workers' Compensation Appeal Board (Bethlehem Steel Corporation),* 725 A.2d 1260 (Pa.Cmwlth.), *appeal denied,* 560 Pa. 690, 742 A.2d 678 (1999), this court stated that we must examine the findings and evidence to determine whether a claimant is seeking employment after retirement.

2. The majority states that "surfing" the web for jobs is "window shopping." (Majority op. at 911.) Although some people use the internet exclusively for "shopping," others actually find available jobs through the internet.