**CITY OF PITTSBURGH and UPMC Benefits Management Services, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LEON-ARD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 2010.
Decided Jan. 21, 2011.
Publication Ordered April 20, 2011.

Bradley R. Andreen, Pittsburgh, for petitioner.

Christopher J. Cimballa, Pittsburgh, for respondent Mark Leonard.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

City of Pittsburgh (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated March 17, 2010, which affirmed the decision and order of a Workers' Compensation Judge (WCJ). The WCJ granted in part and denied in part Employer's Petition to Suspend Compensation Benefits on the grounds that Mark Leonard (Claimant) voluntarily removed himself from the workforce. We affirm the Board's order.

Claimant began working for Employer as a police officer on December 3, 1984. On August 10, 1994, Claimant sustained a work-related injury to his right forearm and right knee in the course and scope of his employment. Claimant returned to work after approximately one year and continued to work full duty until Claimant aggravated the injury to his right knee in November 2004. Thereafter, Claimant received Heart and Lung Act[1] benefits for the period of December 5, 2004 through January 19, 2006. By Notice of Compensation Payable (NCP) issued February 6, 2006, Claimant's Heart and Lung Act benefits were converted to workers' compensation benefits as of January 20, 2006. Pursuant to the NCP, Claimant received benefits in the amount of $493.00 per week based on an average weekly wage of $761.94.

On April 1, 2006, Claimant received a service-connected disability pension from Employer. Claimant was not working light duty or otherwise at the time. On July 19, 2007, Jon B. Tucker, M.D., performed an independent medical evaluation of Claimant on behalf of Employer. Dr. Tucker opined that Claimant was capable of performing full-time light-duty and part-time medium-duty work. Based on Dr. Tucker's recommendations, Employer sent Claimant a Notice of Ability to Return to Work on August 16, 2007. Shortly thereafter, Employer filed a Petition to Suspend Compensation Benefits on September 4, 2007, arguing:

> The Claimant has voluntarily removed himself from the work force as he is capable of light or modified work within the general labor market/work force and yet the Claimant has not sought employment within these physical restrictions in the general labor market/work force which the Claimant is physically capable of performing and thus [Employer] is entitled to suspension of the Claimant's workers' . . . compensation benefits.

(Reproduced Record (R.R.) at 1a, 3a.)[2] Claimant denied Employer's material allegations by Answer filed November 2, 2007.

Employer's suspension petition was assigned to the WCJ. Following hearing, by decision and order dated April 27, 2009, the WCJ granted in part and denied in part Employer's suspension petition, suspending Claimant's benefits only for the

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638, frequently referred to as the Heart and Lung Act.

2. Employer also filed a second Petition to Suspend Compensation Benefits on May 7, 2008, alleging that "Claimant has refused reasonable treatment in the form of surgery to his knee which would increase his work capa-

bilities and decrease his disability." (R.R. at 4a.) The WCJ denied Employer's second suspension petition on the grounds that Employer failed to establish that Claimant refused reasonable medical treatment. Employer did not appeal this aspect of the WCJ's decision and order.

period of August 16, 2007, through November 30, 2008. Specifically, the WCJ stated:

14. The claimant is considered to have voluntarily withdrawn himself from the work force from August 16, 2007 until December 1, 2008.

. . . .

In so finding, this adjudicator finds as fact, importantly, that on or about April 1, 2006, claimant had taken a service-connected disability pension. He did so at a time when he knew, or should have known, that the workers' compensation law (as interpreted by the court), obliged him to be looking for work at that point if he desired to remain on temporary total disability benefits. During this same period, as noted above, in July of 2007, Dr. Tucker actually cleared the claimant for work.

It is found as fact that the claimant knew or should have known that he had the responsibility to look for work, effective April of 2006; that Dr. Tucker cleared him for such work in July of 2007; and that employer, through tender of [the Notice of Ability to Return to Work], reminded claimant that he had "an obligation to look for available employment" as of August 16, 2007. Yet, it is found as fact that the claimant did not constructively look for such work.

15. It is found as fact, however, that claimant did, starting on or about December 1, 2008, begin a good faith search for work within his restrictions. His testimony at the hearing of

February 12, 2009 was fully credible to the undersigned. . . .

Accordingly, it is found as fact that, effective December 1, 2008, claimant was not voluntarily withdrawn from the work force.

. . . .

4. As foreshadowed by the findings of fact and conclusions of law above, *the undersigned only authorizes suspension effective the date when the Notice of Ability to Return to Work was tendered, August 16, 2007. Only at this time did employer have evidence, shared with claimant, that he did in fact have restored work capabilities.*

5. The undersigned also only authorizes suspension through December 1, 2008. In this regard, claimant did, as he is charged to do under the unsatisfactory new cases, respond to his duty of "seeking work" subsequent to his retirement.

. . . .

The undersigned . . . has found as fact and concluded as a matter of law that claimant is now looking for work, and the undersigned reiterates that Mr. Leonard voiced that general intention even at the first hearing.

As far as the undersigned is concerned, this is a credibility determination within the undersigned's province to make.

(R.R. at 15a–16a, 18a (emphasis added).) Employer appealed to the Board. By order dated March 17, 2010, the Board affirmed the WCJ's decision. This petition for review followed.

On appeal,[3] Employer argues that it was entitled to a suspension as of the date

**3.** This Court's scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether rules of administrative procedure have been violated, whether an error of law

has been committed, or whether constitutional rights have been violated. *Thompson v. Workers' Comp. Appeal Bd. (Cinema Center)*, 981 A.2d 968, 972 n. 4 (Pa.Cmwlth.2009).

Claimant accepted his service-connected disability pension, April 1, 2006, and not the date of the Notice of Ability to Return to Work, August 16, 2007. Employer also contends that Claimant was not entitled to recommencement of benefits as of December 1, 2008, because Claimant's job search activities were insufficient to support a finding that Claimant had reentered the workforce. We address these issues in order.

■ Under our Supreme Court's decision in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 379–80 (1987), an employer must generally establish job availability in order to obtain a suspension or modification of a claimant's benefits.[4] Notwithstanding, in *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 79, 669 A.2d 911, 913 (1995), our Supreme Court held that an employer is not required to establish job availability where a claimant has voluntarily removed himself from the workforce through retirement. Our Supreme Court stated:

> It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive. *For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury.*

*Id.* (emphasis added). Accordingly, under *Henderson*, where it is established that a claimant has "retired,"[5] workers' compensation benefits will continue only if the claimant is able to demonstrate that (1) he is seeking employment or (2) the work-related injury forced him to retire. *Id.*

Citing this Court's decision in *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 948 A.2d 907, 910 (Pa.Cmwlth.2008), for the proposition that a claimant who accepts a pension is presumed to have left the workforce, Employer argues that Claimant's benefits should have been suspended as of

---

**4.** Our Supreme Court in *Kachinski* set forth the following guidelines for when an employer petitions to suspend or modify a claimant's benefits:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

**5.** Black's Law Dictionary defines "retirement" as "[t]ermination of one's own employment or career, esp. upon reaching a certain age or for health reasons; retirement may be voluntary or involuntary." Black's Law Dictionary 1431 (9th ed.2009). In this context, the relevant inquiry is whether the claimant has retired from the entire labor market, not whether the claimant has retired from his pre-injury job. *See Cnty. of Allegheny v. Workers' Comp. Appeal Bd. (Weis)*, 872 A.2d 263 (Pa.Cmwlth.2005).

April 1, 2006, the date Claimant accepted his service-connected disability pension. Employer further maintains that the WCJ improperly placed a burden on Employer to demonstrate restored work capabilities by suspending benefits as of the date of the Notice of the Ability to Return to Work, August 16, 2007, because once it was established that Claimant accepted a pension, the burden was on Claimant to show that he was either seeking employment or that his work-related injury forced him to retire in order to avoid suspension of his benefits. In other words, Employer equates accepting a pension with retirement. We disagree.

■ In *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130 (Pa.Cmwlth.2010), this Court addressed the issue of whether acceptance of a pension gives rise to the presumption that a claimant has voluntarily left the workforce. Holding that the determination of whether a claimant has retired depends on the totality of the circumstances, we stated:

> In determining whether acceptance of a pension should create a presumption that a claimant has terminated her career, it is important to look at the facts involved and the type of pension. For example, there are both retirement pensions and disability pensions. There are also different types of disability pensions. Some, like the disability pension at issue, require only a showing that the recipient cannot perform her time-of-injury job. That a claimant is unable to

perform the time-of-injury job due to a work-related injury is part of a claimant's burden of proof in order to receive workers' compensation benefits in the first place. Thus, accepting this type of disability pension by itself, would not, without more, indicate that the claimant has voluntarily left the entire workforce. Rather, it is merely an acknowledgement that the claimant cannot perform her time-of-injury job, which has already been determined through a claim petition or notice of compensation payable.

. . .

> *In order to show that efforts to return a claimant to the workforce would be unavailing because a claimant has retired, an employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce.* Circumstances that could support a holding that claimant has retired include: (1) whether there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a pension and refusal of suitable employment within her restrictions.

*Id.* at 1137–38 (emphasis added). Accordingly, under *Robinson*, acceptance of a pension alone will not necessarily give rise to the presumption that a claimant has voluntarily left the labor market. Rather, an employer must provide sufficient evidence to establish that, under the totality of the circumstances, the claimant has voluntarily left the workforce.[6]

---

6. In *Robinson*, this Court discussed *Hensal*. We explained that our holding in *Hensal* was not premised solely on the claimant's acceptance of a pension, but rather, on the claimant's preference for that pension over available work. We stated:

> In *Hensal*, the claimant suffered a work-related injury and began receiving workers' compensation benefits. *Hensal*, 948 A.2d at

908. Two years later the claimant sought a disability pension. *Id.* The employer then filed a modification petition and showed that work was available within the claimant's work restrictions. *Id.* As part of its modification petition, the employer had identified positions that were available to the claimant. *Id.* at 909. In his decision on the modification petition, the WCJ found

■ Here, the WCJ determined that Claimant had voluntarily withdrawn from the workforce as of August 16, 2007, the date of the Notice of Ability to Return to Work. The basis of the WCJ's determination was that "[o]nly at this time did employer have evidence, shared with [C]laimant, that he did in fact have restored work capabilities." (R.R. at 18a.) Contrary to Employer's contention, the WCJ did not improperly place the burden on Employer to show restored work capabilities. Instead, the WCJ determined whether and when, under the totality of the circumstances, Claimant had voluntarily left the workforce. In that regard, the WCJ found that it was not until Claimant received notice that he was capable of working and then subsequently failed to adequately seek employment that there was sufficient indicia that Claimant had voluntarily left the workforce.[7] We are inclined to agree with the WCJ.

Employer argues, next, that Claimant's benefits should not have been reinstated as of December 1, 2008, because Claimant's job search efforts were not adequate to support a finding that Claimant had reentered the workforce. We disagree.

■ As discussed above, under *Henderson,* a claimant can rebut the presumption that he has voluntarily left the workforce by establishing either that he is seeking employment or that the work-related injury forced him to retire. *Henderson,* 543 Pa. at 79, 669 A.2d at 913. To carry the burden of showing that he was actively seeking employment, this Court in *Hensal* held that a claimant must "show that he engaged in a good-faith job search." *Hensal,* 948 A.2d 907. There, the claimant's job search consisted of periodically checking job websites and newspaper ads for openings. Finding that the claimant failed to engage in a good-faith job search, we observed:

> Searching the Internet and newspaper ads for jobs, without more, does not constitute a job search; it constitutes "surfing" the web and reading the newspaper—it is window shopping. To show that he was engaged in a good-faith effort, a claimant has to show that he applied or sent applications for employment or other indicia that he was actively applying for employment.

*Id.*

■ In this case, Claimant testified at the February 12, 2009 hearing regarding his job search efforts. Claimant testified that he discovered job openings through word of mouth and by searching monster.com, craigslist.org, and newspaper

---

that "general work was available to Claimant within his work restrictions, such as a parking lot attendant or assembler, and that Claimant could have been hired if had been 'motivated to seek employment.'" *Id.* (footnote omitted). Therefore, the WCJ reduced the claimant's benefits by the amount of the average weekly wage of the available positions. *Id.* at 908. Almost two years after the employer filed its modification petition, the claimant was still unemployed. *Id.* at 908 n. 1. *The totality of these circumstances shows that, aside from merely accepting a disability pension, the claimant exhibited the intent to forgo opportunities for employment in favor of receiving his pension and workers' compensation benefits.*

*Robinson,* 4 A.3d at 1135–36 (emphasis added).

7. Notably, Employer sought suspension of Claimant's benefits on the basis that "Claimant has voluntarily removed himself from the work force *as he is capable of light or modified work* within the general labor market/work force and yet the Claimant has not sought employment *within these physical restrictions.*" (R.R. at 1a (emphasis added).) The Employer, therefore, also found Claimant's work capabilities and physical restrictions relevant to the determination of whether Claimant had voluntarily left the workforce.

ads. Claimant further testified that he contacted UPMC about a security specialist position in early December 2008, but he was informed that the position was already filled. Claimant went on to testify that he contacted Northview Elementary School about a position as a driver for after-school programs. Claimant stated that a woman at the elementary school took down his information, but that he was not offered the position. Claimant also testified that he contacted United Health Group about a medical billing job posted on monster.com, but he was informed that he was not qualified. Next, Claimant testified that he applied for a position with an affiliate of Columbia Natural Gas as a flag person, but upon further investigation, determined that this type of work was beyond his physical restrictions. Claimant further testified that he applied for a position transporting senior citizens that was posted on craigslist.org. Claimant stated that he gave a woman his information, but he was not offered the position. Finally, Claimant testified that he applied for a position as a surveillance officer at The Rivers Casino. Importantly, the WCJ determined that Claimant's testimony was credible. In a workers' compensation case, the WCJ has complete authority over questions concerning credibility. *Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth.1995).

We find, therefore, that there is sufficient evidence in the record to support a finding that Claimant was engaged in a good-faith job search as of December 1, 2008. Unlike the claimant in *Hensal*, Claimant's job search efforts went beyond merely "searching the Internet and newspaper ads for jobs." *Hensal*, 948 A.2d at 911.

Accordingly, we affirm the order of the Board.

## ORDER

AND NOW, this 21st day of January, 2011, the order of the Workers' Compensation Appeal Board (Board), dated March 17, 2010, is hereby AFFIRMED.